BALDWIN, Plaintiff in error, V. STATE, Defendant in error.

*No. State 113.    Argued May 1, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 630.)

For the plaintiff in error there was a brief and oral argument by *Robert G. Felker* of Brookfield.

For the defendant in error the cause was argued by *Steven M. Schur,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. The sole issue presented on this appeal is whether there is sufficient evidence to sustain the defendant's conviction on the charge of rape.[1] The defendant contends that the evidence is insufficient as a matter of law to show that sexual intercourse occurred between himself and the complainant, by force and against her will.

The facts are in sharp dispute and the determination of guilt depended upon whether the jury believed the defendant or the complainant. The supreme court is not the place to reargue questions of credibility.[2] The credibility of witnesses and the weight to accord their conflicting testimony is the proper function of the jury, and

---

[1] On appeal the defendant has not contested his conviction upon the charge of false imprisonment. In addition, the record indicates that no alleged error relating to his conviction for false imprisonment was properly presented to the trial court on motions after verdict. Alleged error not presented to the trial court on motions after verdict are not entitled to review by this court as a matter of right. *Bullock v. State* (1972), 53 Wis. 2d 809, 812, 193 N. W. 2d 889; *State v. Schneidewind* (1970), 47 Wis. 2d 110, 119, 120, 176 N. W. 2d 303; *State v. Escobedo* (1969), 44 Wis. 2d 85, 170 N. W. 2d 709.

[2] *Tobar v. State* (1966), 32 Wis. 2d 398, 145 N. W. 2d 782, certiorari denied, 390 U. S. 960, 88 Sup. Ct. 1059, 19 L. Ed. 2d 1157.

only if the evidence that the jury has relied upon is inherently or patently incredible or insufficient will this court substitute its judgment for that of the jury.[3]

The series of events which resulted in the defendant's conviction commenced in downtown Milwaukee on July 31, 1971, at approximately 10:45 p. m. and culminated later that same night in an isolated rural area in Waukesha county.

The complainant, then eighteen years of age, was alone driving her boyfriend's car west on West Wisconsin Avenue in the city of Milwaukee. At the stoplight at 10th Street and Wisconsin Avenue, the defendant, then twenty-one years of age, and a companion in defendant's car, pulled alongside the complainant, made motions with their hands to pull over, and attempted to engage the complainant in conversation. The defendant and his companion were both strangers to the complainant. Complainant ignored their attempts to engage her in conversation and drove off when the light changed. The defendant and his companion followed her down Wisconsin Avenue to 45th Street and then onto Bluemound Road. At approximately 57th Street and Bluemound Road either the defendant or his companion threw a can of beer at complainant's car.

The complainant testified that at 61st Street and Bluemound Road the defendant and his companion "swerved their car to mine, I had to turn the corner onto about 61st Street;" that she stopped her car; and that the defendant and his companion stopped their car in front of hers, and got out and walked back to her. They asked the complainant to go out with them for a couple of drinks. The complainant declined their offer, and said she was going home and had no intention of going with

[3] *State v. Zdiarstek* (1972), 53 Wis. 2d 776, 193 N. W. 2d 833; *Lemerond v. State* (1969), 44 Wis. 2d 158, 170 N. W. 2d 700; *State v. McCarter* (1967), 36 Wis. 2d 608, 153 N. W. 2d 527.

them. Complainant drove off and continued to drive west on Bluemound Road.

As the complainant turned off Bluemound Road and on to Honey Creek Parkway, the defendant followed her and drove his car alongside hers down the parkway. The defendant and his companion yelled, called her names, swore and demanded that she pull over. At 84th Street and Honey Creek Parkway the defendant forced her to pull off the road by driving his car in front of complainant's car and stopping at an angle to her car. The defendant and his companion got out of their car and walked over to complainant's car. Defendant then forced her to roll her window down through threats to the effect that unless the complainant rolled her window down he would break it in her face. Complainant testified that she rolled the window down halfway; that the defendant reached in and grabbed her by the throat; and that after the defendant released her throat his companion pulled out a switchblade knife and put it against her neck. Defendant's companion forced his way into the complainant's car.

Defendant returned to his car and drove west on I-94 with his companion, now driving complainant's car, following directly behind. While driving down I-94, defendant's companion attempted to put his hand inside complainant's pants and he grabbed her breast.

The two cars turned off I-94 onto Highway 18 in Waukesha county, drove past the state patrol headquarters located at that intersection, and took an immediate right turn. While the car in which she was riding slowed down to make the turn, complainant jumped from the car. She ran out onto Highway 18 and attempted to wave down passing cars for help. None of the cars stopped. She then ran across the highway into a small open field toward the state patrol headquarters. During this time defendant had pulled his car into the parking lot in front of the state patrol headquarters. He got out of his car

and intercepted the complainant in the field. Although complainant was screaming, "don't come near me," defendant, saying he was just going to take her home, ran across the field, grabbed complainant's wrist, pulled her back to his car, and pushed her into it. Complainant testified that she tried to pull away but was unable to do so.

The defendant drove across Highway 18 onto a side road and stopped on top of a hill. At this point, complainant again attempted to flee, but as she started to get out of defendant's car he grabbed her by the hair and pulled her back into his car. Still holding her hair, the defendant drove for approximately twenty minutes until he stopped next to a field in the town of Pewaukee. The defendant pulled the complainant out of the car and across the field. Complainant tesified that there were no buildings or lights that she could see in the area.

When they reached the back of the field, defendant ordered her to take her clothes off. The complainant refused. The defendant stated that he had to do what he was going to do for initiation into the "Outlaws." Complainant testified that she understood the "Outlaws" to mean a motorcycle gang in Milwaukee, and that defendant was wearing motorcycle boots, blue jeans with rivets up the sides, and a black T-shirt. When the complainant again refused to take her clothes off, the defendant threatened to take her down to the clubhouse to meet his friends. Complainant testified that she "figured I didn't have much choice anyway," so she undressed herself. Defendant then pushed her down and had sexual intercourse with her.

In a criminal prosecution if there is any credible evidence which in any reasonable view supports the verdict it cannot be disturbed on appeal. *State v. Wickstrom* (1961), 14 Wis. 2d 416, 111 N. W. 2d 176; *State v. Lombardi* (1959), 8 Wis. 2d 421, 99 N. W. 2d 829; *State v. Whitney* (1945), 247 Wis. 112, 18 N. W. 2d 705. At trial, the state must prove defendant's guilt beyond a rea-

sonable doubt; however, on appeal reversal is warranted only when the evidence considered most favorable to the state and conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to the degree of certitude the law defines as beyond a reasonable doubt. *State ex rel. Kanieski v. Gagnon* (1972), 54 Wis. 2d 108, 194 N. W. 2d 808; *Strait v. State* (1969), 41 Wis. 2d 552, 164 N. W. 2d 505; *State v. Davidson* (1969), 44 Wis. 2d 177, 170 N. W. 2d 755; *Waukesha County v. Mueller* (1967), 34 Wis. 2d 628, 150 N. W. 2d 364. Therefore, the only question before this court is whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt. *State ex rel. Kanieski v. Gagnon, supra; Zebrowski v. State* (1971), 50 Wis. 2d 715, 185 N. W. 2d 545; *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183; *State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775.

Rape is defined in sec. 944.01 (1), Stats., as sexual intercourse with a woman other than one's wife by force and against her will.[4] In a prosecution for rape, competent evidence must show beyond a reasonable doubt not only that defendant committed the acts charged but that he did so under such circumstances that every element of the alleged offense existed.

Sec. 939.22 (36), Stats., defines "sexual intercourse" for purposes of the criminal code as follows:

" 'Sexual intercourse' requires only vulvar penetration and does not require emission."

While actual contact of the sexual organs of a man and a woman and actual penetration into the body of the

---

[4] Sec. 944.01, Stats., provides: ". . . Any male who has sexual intercourse with a female he knows is not his wife, by force and against her will, may be imprisoned not more than 30 years."

latter is an essential element of the crime of rape, the degree to which the person of the female is entered is not material. Any actual penetration is sufficient to constitute rape when the other essentials of the crime are present. *State v. Crabtree* (1941), 237 Wis. 16, 21, 296 N. W. 79; *Murphy v. State* (1900), 108 Wis. 111, 114, 83 N. W. 1112.

Proof of penetration need not be in any particular form.[5] Where one of understanding testifies to a completed act of sexual intercourse it has been held to be sufficient proof of penetration. *Gauthier v. State* (1965), 28 Wis. 2d 412, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671; *Cleaveland v. State* (1933), 211 Wis. 565, 248 N. W. 408; *Athos v. State* (1929), 199 Wis. 228, 225 N. W. 692. At the time of the incident, the complainant was without mental or physical disability.

The defendant advances the spurious argument that the evidence is insufficient in that the complainant never saw the defendant's sexual organs.

Penetration may be proved by means other than an account based on visual observations. The Arkansas Supreme Court, in *Needham v. State* (1949), 215 Ark. 935, 940, 224 S. W. 2d 785, rejecting a similar argument, stated:

". . . If it were necessary that this element of rape be proved in every case by an eye-witness, the accused could not ordinarily be convicted if the prosecutrix' vision had been obscured by darkness, unconsciousness or any other cause. But that is not the law; penetration, like other facts, may be proved by means other than an account based on visual observation. . . ."

No useful purpose will be served by relating the details of the complainant's testimony as to the act of intercourse. We have examined the record and it

---

[5] 75 C. J. S., *Rape*, p. 547, sec. 71.

demonstrates sufficient credible evidence upon which the jury could find beyond a reasonable doubt that the defendant had sexual intercourse with the complainant.

As previously stated, sec. 944.01 (1), Stats., provides that the sexual intercourse must be accomplished by force and against the will of the woman. If the woman consents, no matter how reluctantly, at any time prior to penetration, the act does not constitute rape. *Gullickson v. State* (1950), 256 Wis. 407, 412, 41 N. W. 2d 291; 65 Am. Jur. 2d, *Rape*, p. 765, sec. 7.

Sec. 944.01 (2), Stats., provides that "by force and against her will" means that her utmost resistance is overcome or prevented by physical violence or that her will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm.

The principles that guide this court in assessing whether a claimant's resistance constituted her "utmost resistance" were fully discussed in *State v. Muhammad* (1968), 41 Wis. 2d 12, 162 N. W. 2d 567. This court, on pages 18, 19 and 20, stated:

"Many cases have construed the 'utmost resistance' requirement of the above statute. In several recent cases this court has reemphasized that the term 'utmost resistance' is relative, not absolute. This standard was spelled out in *McLain v. State.*

" '. . . the term "utmost resistance" is a relative rather than a positive term. What would be "utmost resistance" on the part of a weak and nervous person, with a temperament easily frightened, might be the veriest sham on the part of a robust person in good health, whose nerves and courage are normal.'

" . . .

"Thus it appears that 'utmost resistance' is measured by a subjective test of what resistance an individual victim is capable of exerting. In *State v. Schmear* we stated that 'While the law requires the utmost resistance as evidence of the woman's will, the law does not require the useless or the impossible.' And in *State v. Waters,*

we stated that 'The strict physical-resistance requirement is relaxed somewhat if it would be useless to resist.' " [6]

Applying these principles to the instant case, it does not appear that complainant's utmost resistance was overcome or prevented by physical violence. Although the complainant testified that the defendant led her across the field by holding her wrist and that she "tried to pull away from him," such evidence does not demonstrate that the complainant resisted to her utmost, or that such resistance was overcome or prevented by physical violence. Therefore, the question before this court is whether her will to resist was overcome by threats of imminent physical violence likely to cause great bodily harm.

The defendant argues that the complainant was not physically abused, or hysterical, incoherent, or otherwise deranged by the threatening violation of her person. Defendant cites *State v. Hoffman* (1938), 228 Wis. 235, 240, 280 N. W. 357, for the proposition that a rational choice not to resist, no matter how coerced, constitutes consent and that only when threats render a victim's mind "well nigh incapable of continuing her resistance" is the choice to submit not voluntary. [7]

A rational choice not to resist coerced through threats of violence and fear is not a legal choice and the decision to submit compelled by such threats, although rationally made, does not constitute a voluntary submission. To say that there can be a coerced voluntary submission is patently contradictory. In *State v. Herfel* (1971), 49

[6] *See also: Gray v. State* (1968), 40 Wis. 2d 379, 388, 161 N. W. 2d 892; *State v. Clarke* (1967), 36 Wis. 2d 263, 277, 278, 153 N. W. 2d 61, certiorari denied, 393 U. S. 861, 89 Sup. Ct. 140, 21 L. Ed. 2d 129.

[7] *See also: Loescher v. State* (1910), 142 Wis. 260, 125 N. W. 459, wherein the court used such terms as "rendered insensible through fright."

Wis. 2d 513, 182 N. W. 2d 232, this court rejected an argument similar to the one now being made by the defendant, and modified *State v. Hoffman, supra,* and the line of authority cited therein. In *State v. Herfel, supra,* the defendant at one point during the incident held a pistol to the victim's head and finally forced her to submit. This court, on pages 518 and 519, stated:

"The test of whether a woman's will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm is subjective and it need not be expressed in terms of fear and incapability to resist in every case. Some women may respond to the threat of gunpoint without great fear or being rendered incapable of resisting. Resistance may be completely and imminently dangerous. In such a situation, fear or terror not to resist as an expression of nonconsent may be supplanted by a strong motivation or belief which induces the choice to submit. The choice under such conditions, while philosophically a choice, is legally unfair and is legally no choice; it does not constitute legal consent. Resistance, or the lack of resistance, as such is not the central issue in rape. It is only some evidence of whether the woman's will to resist is overcome under the circumstances and this question depends upon other factors. The threat of death or serious personal injury by use of a gun may be reason enough not to resist and to overcome the will within the meaning of this section in defining the crime of rape. The law does not require a woman to become a martyr to test by resistance the sincerity of a threat to rape at gunpoint. We believe the law has advanced to this view since *Hoffman* was decided."[8]

In the instant case, the complainant was forcefully seized at knife-point and driven to an isolated area where any outcrys for help would have been of little avail. Although she made many attempts to escape, even to the extreme of jumping from a moving car, the defendant demonstrated his ability to control the complainant by

---

[8] *See also: State v. Clarke, supra.*

successfully thwarting every attempt to flee made by the complainant. The defendant, by both words and dress, indicated to the complainant that he was a member of a motorcycle gang known for their violence. When the complainant refused to submit, the defendant threatened to take her down to the gang's clubhouse to meet his friends.

Threats of death or serious bodily injury need not be made in any particular manner. Under the facts of this case, it is not unreasonable to believe that the complainant was put in fear of her life or serious bodily injury. Whether such fear constituted the predominant reason for her submission is for the jury to determine. The jury's determination that the complainant's will to resist was overcome by threats of imminent bodily injury, is supported by credible evidence and will not be overturned.

Although the defendant draws this court's attention to conduct on the part of the complainant after the completion of his attack upon her, including her failure to notify the police until the following day, such evidence does not necessarily demonstrate consent on the part of the female. The law does not prescribe any type of conduct after the completion of the act to evince nonconsent.[9] Furthermore, the complainant's actions in the instant case are easily explained by threats made by the defendant upon both her life and the lives of her family if she reported the attack to the police.

The evidence adduced, believed and rationally considered by the jury is sufficient to prove beyond a reasonable doubt that the complainant's will to resist was overcome by threats and fear of violence, and that the defendant is guilty of the offense charged.

*By the Court.*—Judgment and order affirmed.

[9] *State v. Herfel, supra,* page 519; *State v. Schmear* (1965), 28 Wis. 2d 126, 135 N. W. 2d 842.