[Crim. No. 32127. Second Dist., Div. One. Oct. 11, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL EARL WALLS et al., Defendants and Appellants.

COUNSEL

Michael W. McIsaac and Jeffrey Shuwarger, under appointments by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LILLIE, Acting P. J.—The court found Walls and Jeans guilty of first degree burglary (count I) and robbery (count II), Walls guilty of assault with a deadly weapon, and Jeans guilty of assault by means of force likely to produce great bodily injury (count III) and Walls guilty of rape (§ 261, subd. 3, Pen. Code) (count IV); and made use findings as to Walls on all counts and as to Jeans on counts I and II, and great bodily injury findings as to both defendants on counts I and II. Defendants appeal from the judgment.

Around 2 a.m. Mr. Willis, 60 years old and an apartment manager, was awakened by Walls who was banging on the door of apartment 10; after telling Walls twice no one was home and to stop, Willis went over to

Walls; Walls pulled out a knife, and Willis hit him with the heel of his hand; Walls left and said he would be back.

Shortly thereafter, Jeans knocked on Willis' door; he asked Willis to open the door to apartment 10; Willis left the door ajar and turned to get the key when both defendants rushed in; Willis reached for a shotgun behind the door but Walls pushed him against the wall and took it from him, repeatedly hit him in the head with the shotgun, broke his left arm and beat him up during which, according to Willis, Walls said "he will kill me"; Willis hollered to Jackie, his niece, to get the other gun; Jackie ran out and saw Walls and Jeans kicking and beating Willis who was on the floor; Walls ordered her to get back into the bedroom; Jeans took the shotgun, ran into her room, pointed the gun at Jackie and asked where Willis' wallet, her purse and the other gun were; she said she did not know; Jeans returned to the living room where Walls was beating and kicking Willis; again wielding the shotgun and kicking Willis, Walls told Jeans "See if he got any money" whereupon Jeans grabbed Willis' pants in the belt area, tore them off of Willis and removed his wallet and $670 (partly rent receipts); Jeans then ran out the door.

Walls dragged Willis into his bedroom, ran into Jackie's room, forced her into Willis' bedroom, shoved her against the wall, lifted her nightgown and tried to rape her while standing; pointing the shotgun at her he forced her to lie on a mattress and in Willis' presence, had an act of intercourse with her. Walls saw a revolver sticking out from under the bed. Defendants took Willis' shotgun, revolver, wallet, money and watch.

After being advised of and having waived his *Miranda* rights, Jeans told officers he went to Willis' apartment for the purpose of "possibly punching out the old man," when he got there the old man was struck, he got $200 from the apartment, came into possession of Willis' watch and burned his wallet and I.D.[1]

■ Appellants contend that the evidence is insufficient to establish a burglary because the crime is complete when entry is made with the

[1]Walls testified that when he turned to leave after knocking on the door of apartment 10, Willis struck him from behind with a gun; later he and Jeans went to Willis' apartment to see why Willis had hit him; he knocked, and Willis answered pointing a gun at Jeans' head; he grabbed for the gun, a struggle ensued and he struck Willis to get the gun; he took the shotgun and pistol so Willis would not shoot him in the back. He denied taking Willis' watch and wallet or raping Jackie or seeing Jeans use a gun. Jeans testified that when he arrived at Willis' apartment he saw Walls with blood on his head, he went into the apartment to separate them then left; he denied he was given his *Miranda* rights or that he made any statement to police.

necessary intent, and all the evidence shows is that they went to Willis' apartment to commit a battery, a misdemeanor. Although the People must show that one accused of burglary entered the premises with intent to commit theft or any felony (§ 459, Pen. Code), intent is rarely susceptible of direct proof and may be inferred from the circumstances disclosed by the evidence. (*People* v. *Banks,* 62 Cal.App.3d 38, 42 [132 Cal.Rptr. 751]; *People* v. *Moody,* 59 Cal.App.3d 357, 363 [131 Cal.Rptr. 923]; *People* v. *Earl,* 29 Cal.App.3d 894, 896 [105 Cal.Rptr. 831].) Where the facts and circumstances of a particular case and the conduct of the accused reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the determination of guilt may not be disturbed on appeal. (*People* v. *Matson,* 13 Cal.3d 35, 41 [117 Cal.Rptr. 664, 528 P.2d 752]; *People* v. *Bard,* 70 Cal.2d 3, 5 [73 Cal.Rptr. 547, 447 P.2d 939].)

Viewing the evidence in a light most favorable to respondent (*People* v. *Caudillo,* 21 Cal.3d 562, 570-571 [146 Cal.Rptr. 859, 580 P.2d 274]), we conclude, as did the trial court, that defendants entered Willis' apartment with the intent to rob him, at the very least with the dual intent of beating up Willis, possibly killing him,[2] and committing larceny. Defendants knew Willis was the apartment manager and likely to have in his possession a sum of money collected as rents; at the outset while Walls was beating and kicking Willis, Jeans pointed the shotgun at Jackie demanding Willis' wallet, her purse and the other gun, then Walls told Jeans "See if he got any money" whereupon Jeans "tore off" Willis' pants and removed his wallet, $670 which included rent money and his watch. Although one of the reasons that defendants went to Willis' apartment may have been for revenge and "possibly punching out the old man" (more likely to kill or seriously injure him), such intent "does not negative the contemporaneous intent to commit theft. That a person might entertain at the same time both an intent to steal and an intent to assault or kill would appear to be self-evident." (*People* v. *Reed,* 241 Cal.App.2d 102, 105 [50 Cal.Rptr. 300].)

 Appellants challenge the findings of firearm use in the commission of the burglary, and Walls the finding that he inflicted great bodily injury. Again relying upon the premise that burglary is complete upon

---

[2]Willis testified that Walls holding the shotgun hit him in the head numerous times, broke his left arm, beat him "everywhere he could hit. In the ribs, in the eye, almost putting it out, . . . he was calling me all kinds of names . . . and telling me he will kill me." He was in the hospital for seven days and treated for gashes in the head, a broken left arm, fractured ribs, bruises about the face, cerebral concussion and numerous bruises and contusions.

entry with the intent to commit theft or any felony, they argue they could not have used a firearm, and Walls could not have inflicted great bodily injury "in the commission" of the burglary because they acquired the gun and Walls beat up Willis *after* their entry to the premises and the commission of the burglary.

To establish commission of a burglary the prosecution need only prove that one entered the premises with the intent to commit theft or a felony, and the crime is complete for that purpose, but this does not dictate the conclusion that the crime is complete for all purposes precluding consideration of the acts and conduct of the intruder after entry as part of the commission of the crime, or that the crime ends upon entry and cannot continue while he is unlawfully on the premises. We have been cited to no authority on this point but our courts have always recognized the concept that the burglary continues after entry with the requisite intent, is effected. In *People* v. *Caudillo,* 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], a rape was committed after entry to the apartment; although the Supreme Court found no great bodily injury to enhance the burglary sentence, the assumption that the sexual assault had been committed in the course of the commission of the burglary[3] is clear. Likewise in *People* v. *Miller,* 18 Cal.3d 873 [135 Cal.Rptr. 654, 558 P.2d 552], a security guard was shot after entry of defendants to a jewelry store with intent to rob; the shooting was considered as committed in the course of commission of the burglary.

Section 12022.7, Penal Code was enacted to deter infliction on victims of serious injury accompanying burglary, robbery, or other felony. In the case of a burglary, if the purpose of the statute is to be advanced, it matters not whether injury was inflicted upon the occupant at the time the burglar gained entry or after the entry was effected. Generally burglaries are committed in secret at a time when the occupants are absent or asleep and in most cases firearm use or injury to the occupant occurs only after the intruder is discovered on the premises. To hold that the phrase "in the commission" of the felony, as used in sections 12022.5 and 12022.7, Penal Code, excludes firearm use or infliction of great bodily injury *after* the intruder gains entry to the premises with the requisite intent, would lead to the anomalous result that before a burglary sentence

---

[3]Involved was the issue of the legislative intent in the use of "great bodily injury" in section 461, Penal Code, which provided for sentence enhancement where defendant committed burglary, "and in the course of commission of the burglary" with the intent to inflict such injury, inflicted great bodily injury on any occupant of the premises. The court also discussed section 12022.7, Penal Code which supplants the specific great bodily injury provision of sections 213, 264 and 461 as of July 1, 1977 (21 Cal.3d at pp. 580-583).

can be enhanced under these statutes, the firearm must have been used by the intruder, or he must have inflicted the great bodily injury at the very moment he stepped over the threshold or while trying to effect entry to the premises, a result not only unreasonable but one that defeats the obvious purpose of the statute to offer protection to potential burglary victims who are on the premises. On the record before us we conclude that after entry to Willis' apartment and while defendants were on the premises, their use of the shotgun and infliction of great bodily injury on the occupants occurred "in the commission" of the burglary for the purpose of sentence enhancement. (§§ 12022.5, 12022.7, Pen. Code.)

■ Jeans' assertion that the use finding is not supported by the evidence because he did not "personally" use a firearm in the commission of the burglary, is without merit. He personally pointed the shotgun at Jackie. But the evidence does not support his personal use of the firearm in the commission of the robbery of Willis (§ 12022.5, Pen. Code; *People* v. *Walker,* 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306].) His use of the firearm (on Jackie) was outside of Willis' presence; and although the shotgun must have changed hands when Jeans returned to the living room, no evidence establishes that Jeans had it in his possession at the time Willis was robbed.

■ Walls' contention that the evidence is insufficient to support the finding that he "used" a firearm in the commission of the Willis robbery because he used it as a bludgeon, is without substance. This constituted a "use" because "striking the victim with the gun carries the ever-dangerous potential of a discharge of the firearm, both such 'uses' are properly included within the spirit and purpose of Penal Code section 12022.5." (*People* v. *Reaves,* 42 Cal.App.3d 852, 857 [117 Cal.Rptr. 163].)

■ Likewise without merit is Wall's argument that the element of penetration was not established in the rape conviction because the only testimony is that of the prosecutrix that an act of sexual intercourse took place. Jackie testified that Walls "laid on top of me and did what he wanted to do;" the court then inquired if she knew what an act of sexual intercourse is, and she responded "Yes;" asked, "This did take place?" Jackie answered "Yes," and said it was against her will. Obviously Jackie knew what an act of intercourse was because she had a child who was then asleep on the premises. Rejecting this same contention, the court in *People* v. *Stevenson,* 275 Cal.App.2d 645, said at page 650 [80 Cal.Rptr. 392]: "Penetration may be proved by circumstantial evidence. [Citation.] Evidence that defendant committed an act of sexual intercourse with the

prosecutrix necessarily means that penetration took place. [Citation.] The victim's testimony does not require corroboration. [Citation.] The necessary elements constituting the crime of rape were clearly established. [Citation.]." The claim was also made in *People* v. *Scott,* 270 Cal.App.2d 773 [76 Cal.Rptr. 117]. The court stated: "The victim, a 23-year-old woman, who had once had a child, testified that an act of sexual intercourse had taken place, and that she knew what sexual intercourse was. This was sufficient evidence of penetration. If there was any doubt as to whether penetration occurred, defendant's counsel should have pursued that question further. [Citation.]" (P. 776; see also *People* v. *Haywood,* 131 Cal.App.2d 259, 261 [326 P.2d 539].) Defense counsel did not pursue the matter on cross-examination.[4]

The Attorney General is correct in suggesting that Walls' contention that the court erred in enhancing the sentence pursuant to section 667.5, subdivision (c), Penal Code because no prior prison term was alleged or proved, is based on a misreading of the record. It is clear from the abstract of judgment that Walls' sentence was not enhanced because of a prior conviction but because the court ordered the sentence on count IV be served consecutive to count I pursuant to section 1170.1, subdivision (a), Penal Code.

The judgment as to Samuel Earl Walls is affirmed. The judgment as to Walter Louis Jeans is modified by striking from the sentence on count II (robbery) the prison term imposed pursuant to section 12022.5, Penal Code. So modified the judgment is affirmed.

Thompson, J., and Hanson, J., concurred.

A petition for a rehearing was denied October 27, 1978, and the petition of appellant Jeans for a hearing by the Supreme Court was denied December 6, 1978.

---

[4]Jackie's testimony was corroborated by Willis who testified Walls made her lie down on the mattress where he was "and he forced her;" "I saw it, I was sitting right there on the edge of the mattress looking at it;" asked "did he rape her in your presence?" without objection interposed Willis answered "Right in my presence."