· **STATE**

v.

**Richard R. GOLDEN.**

**No. 80–126–C.A.**

Supreme Court of Rhode Island.

June 5, 1981.

at least conceivable that the social relationship could involve certain misdemeanors.

**434**

Dennis J. Roberts, II, Atty. Gen., Alyssa L. Talanker, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Richard M. Casparian, Deputy Public Defender, for defendant.

## OPINION

MURRAY, Justice.

For Doris F., July 1, 1978, was a payday. After she returned home from work at approximately four-thirty or five o'clock that afternoon, she decided to go to the malls in Warwick to shop for some clothing. She left her house on Delaine Street in Providence at approximately 6:30 p. m. and walked to Olneyville Square. From there, she took a bus to the bus stop located on Washington Street in downtown Providence, where she waited for a transfer bus to the malls. After waiting for the bus for some time, she inquired of a bus driver if another bus would be departing for the malls. When he replied that there would not be one, she decided to hitchhike to the mall. It was a decision that Doris F. will remember.

Shortly after she began to hitchhike at the corner of Washington and Mathewson Streets, the defendant, Richard R. Golden (Golden), happened by. Doris asked him if he was heading toward the highway or to the Warwick Mall. Apparently, he offered her a ride and she entered his car. Shortly thereafter, while they were still on Washington Street, Golden asked Doris if she wanted to make any money. According to Doris, she replied, "No" but Golden said that it was all right and that he would take her to the mall anyway. They headed for the mall, apparently following the same route from downtown that the bus she was accustomed to riding would have taken— Broad Street to Elmwood Avenue to Pontiac Avenue; however, they never got to Pontiac Avenue, for as they neared the Route 95 underpass on Elmwood Avenue, Golden abruptly turned off the main road onto a dirt side road. Afraid, Doris asked Golden what was going on. Golden responded by both producing a knife he had concealed in his jacket and telling Doris that she was going to "give him sex." A struggle ensued, during which Doris managed to extricate herself from Golden's grasp. She fled from Golden and the car, but he pursued her and caught her. When he did, he grabbed her by her sweater and thrust the knife he had brandished moments earlier at her throat. To protect herself, Doris shielded her face with her left hand, which unfortunately was cut severely by the knife. Doris's recollection of the sequence of events at this point is somewhat vague; however, she did testify that the next thing she knew Golden was on top of her. Doris testified at trial that while

Golden was on top of her, she heard voices nearby. To attract attention, she raised her left hand, which was still bleeding at the time. As it turned out, the voices she heard belonged to three neighborhood youths who happened to be in the vicinity.

One of the youths, Eric, testified that before he saw Doris raise her hand, he and his two companions, Alan and Michael, saw defendant's car parked in an area where they had never seen cars parked. Eric and the others suspected that the car might be stolen, and they decided to record the license-plate number. As they approached the car, they saw Doris and Golden beside it. Alan testified that he saw them "having sex" and that Golden was "going up and down" on Doris. Alan further testified that Golden had his pants pulled down to his ankles.

All three youths then ran to Alan's house, where they informed Alan's grandmother that they had just "seen some girl get raped." The grandmother promptly phoned the Providence police, and the boys ran back to the scene to await them. Eric testified that when they returned, he saw Golden "going up and down on the girl."

The first officer to arrive on the scene was Dennis W. Simoneau of the Providence police department. He testified that when he arrived, he noticed defendant and Doris lying in the grass and that they "appeared to be having intercourse." He then ran toward them, "straddled across the two subjects and grabbed the male, picked him up and put him to the side, as the female slipped out." Officer Simoneau noticed that Golden "still had an erection" when he pulled him off Doris.

Evidence relating to the above sequence of events was presented to a Providence County grand jury, which returned an indictment charging Golden with one count of common-law rape [1] and one count of assault with a dangerous weapon.[2] The defendant

was later tried before a judge and jury of the Superior Court.

After the prosecution had rested its case, defendant moved for a judgment of acquittal on the rape count. The trial justice denied this motion and allowed the case to go to the jury, which returned a guilty verdict on both counts of the indictment. Following the jury's verdict, defendant moved for a new trial, which motion was also denied by the trial justice. The trial justice's denials of these motions form the basis for defendant's present appeal.

I

The gravamen of defendant's motion for judgment of acquittal was that the prosecution failed to present sufficient evidence on the rape charge to allow the case to go to the jury. Specifically, defendant contended in his motion that an essential element of the crime of common-law rape is that there must be proof that the male's sex organ penetrated the female's vagina, and that because of a lack of evidence of penetration in this case, the jury could not find defendant guilty of rape. On appeal, defendant argues that the trial justice erred in denying his motion for judgment of acquittal.

The statute under which Golden was indicted, G.L.1956 (1969 Reenactment) § 11–37–1 provided, at the time:

"Every person who shall commit rape shall be imprisoned for life or for any term not less than ten (10) years."

Common-law rape is the act of sexual intercourse committed by a man with a woman not his wife and without her consent, committed when the victim's resistance is overcome by force or fear, or under other prohibited conditions. *E. g., State v. Lora*, 213 Kan. 184, 192, 515 P.2d 1086, 1093 (1973). There can be no question that penetration is an element of the crime of rape and that this element must be proven beyond a reasonable doubt. *E. g., State v. Bono*, 128

1. Then a violation of G.L.1956 (1969 Reenactment) § 11–37–1. Public Laws 1979, ch. 302, § 2, repealed this section and substituted therefor a new statutory scheme setting forth vari-ous degrees of sexual assault and the penalties therefor.

2. In violation of G.L.1956 (1969 Reenactment) § 11–5–2.

N.J.Super. 254, 319 A.2d 762 (1974). However, it is well settled that penetration may be proven by circumstantial evidence. *E. g., People v. Walls,* 85 Cal.App.3d 447, 454, 149 Cal.Rptr. 460, 465 (1978).

In the instant case, the prosecutrix stated on several occasions during her testimony that defendant "had intercourse" and "forceful * * * forcibly [sic] sex" with her. We note here that proof of penetration need not be in any particular form. When one of understanding testifies to a completed act of sexual intercourse, it has been held to be sufficient proof of penetration. *Baldwin v. State,* 59 Wis.2d 116, 123, 207 N.W.2d 630, 634 (1973); *accord, People v. Walls,* 85 Cal.App.3d at 454–55, 149 Cal. Rptr. at 465 (1978);[3] *State v. Steinbrink,* Minn., 297 N.W.2d 291, 292 (1980); *State v. Ashford,* 301 N.C. 512, 272 S.E.2d 126, 127 (1980); *Watson v. State,* 548 S.W.2d 676, 679 (Tex.Crim.App.1977). There was no evidence in this record to indicate that the prosecutrix was laboring under any mental or physical infirmity either at the time of the incident or at the time of her testimony that would render her unable to understand the nature of her testimony. *See Baldwin v. State,* 59 Wis.2d at 123, 207 N.W.2d at 634.

When a motion for judgment of acquittal is made, the trial justice's review of the evidence is limited to that evidence which the state claims is capable of generating proof of guilt beyond a reasonable doubt. The trial justice must review this evidence in the light most favorable to the state, drawing therefrom all reasonable inferences that are consistent with the accused's guilt. The trial justice can assess neither the credibility of witnesses nor the weight of the evidence at that time. *E. g., State v. Roddy,* R.I., 401 A.2d 23, 32 (1979).

When the evidence in the instant case is viewed in this light, we cannot say that the trial justice erred in denying defendant's

motion for judgment of acquittal. The trial justice, in his decision to deny the motion, stated:

"What Mr. Casparian said, of course, is true, that there was no question put to the witness as to the precise elements that sometimes are brought out in a trial of rape. The fact is, however, that the complaining witness said on more than one occasion that 'We had intercourse.' There is an abundance of testimony as to the fact that they were apparently engaged in sexual intercourse, that is, fornication, by the boys who came upon them, and by the police officer who interrupted the act at the time of the arrest. When you take all of that into account, I think there is sufficient [sic] here to say that the State has introduced evidence as to all of the elements which constitute the crime of rape. It's already been defined by defense counsel and by the prosecutor. It's not necessary on my part to repeat those elements. They have been, there has been testimony as to each of the elements concerning the unlawful carnal knowledge of the woman by the man, forcibly and against her will. The credibility of witnesses and the weight of the testimony are two elements which are not before the judge on a motion for judgment of acquittal.

"For those reasons, the defendant's motion for judgment of acquittal must be denied."

We find that the testimony of the prosecutrix, a twenty-three year-old woman, was sufficient to allow the case to go to the jury on the issue of penetration. *See State v. Steinbrink,* Minn., 297 N.W.2d at 292 (1980) (held that a fifteen-year-old girl knew the meaning of the terms "making love" and "sexual intercourse" which she used in her testimony and that such testimony, if believed, was sufficient to establish penetration).[4] Moreover, in this case there was an

---

**3.** In California, such a statement by the prosecutrix *necessarily* means that penetration took place. *People v. Walls,* 85 Cal.App.3d 447, 454–55, 149 Cal.Rptr. 460, 465 (1978); *People*

*v. Stevenson,* 275 Cal.App.2d 645, 650, 80 Cal. Rptr. 392, 395 (1969). (Emphasis added).

**4.** *Cf. Martinez v. People,* 160 Colo. 534, 422 P.2d 44 (1966) (In that case, the court held it to

abundance of other evidence; that is, that of the eyewitnesses, which, when viewed in the light most favorable to the state, was sufficient to allow the jury to decide the issue of whether the defendant's penis penetrated the victim's vagina. Under the circumstances of this case, we therefore reject defendant's contention that the testimony of the victim and the eyewitnesses, either standing alone or in combination with the testimony of other witnesses, was insufficient to allow the case to go to the jury on the issue of common-law rape.

## II

The defendant next ascribes error to the trial justice's denial of his motion for a new trial. In support of his contentions, defendant advances the same arguments that he advanced in support of his appeal from the denial of his motion for judgment of acquittal. In addition, defendant contends that his conviction violated the due-process clause of the Constitution in that it was based upon insufficient evidence and impermissible inferences.

As we have stated so often in the past, it is the duty of the trial justice when ruling on a motion for a new trial to make an independent appraisal of the evidence in light of his charge to the jury. He is to weigh the evidence and assess the witnesses' credibility and

"[i]n discharging that duty he can accept some or all of the evidence as having probative force; or he can reject some of the testimony because it is impeached or contradicted by other positive testimony or by circumstantial evidence, or because of inherent improbabilities or contradictions which alone or in connection with other circumstances satisfies him of its falsity, * * * or because it is totally at variance with undisputed physical facts or laws; * * * or he can add to the evidence by drawing proper inferences therefrom and giving weight thereto." *Barbato v. Epstein*, 97 R.I. 191, 193–94, 196 A.2d 836, 837 (1964). [Citations omitted.]

It is plainly evident from the record that the trial justice properly executed this function. In ruling on the motion, he stated:

"This case was tried a fairly short time ago. Testimony began, I believe, on October 2, and the testimony continued on the 3rd. On October 4, we heard the final—I guess the lawyers argued on October 3, and the jury was instructed in the morning of October 4. I say that because it happened within the past three weeks, and the testimony is fresh in the minds of all of us.

"The complaining witness was a person of limited intelligence. She was not the brightest, most alert type of witness that we have seen in the courtroom; but she was a truthful witness, and she testified adequately and properly concerning an experience in her life that was horrendous. She made the great mistake of getting into an automobile as a hitchhiker, with a man who was out to have sex at all cost.

"There is no question from the testimony of the complaining witness that she was involved in having sexual intercourse with this defendant. I am satisfied beyond all doubt that the defendant's penis was inserted into the vagina of the complaining witness, and that this was done against her will. I'm satisfied that there is no question that this woman struggled to save her life, and finally yielded because she realized that it was either her being raped or being murdered. This man made it very clear when he showed her the knife, that he intended to use it, and he threatened her with it. He threatened her life. As a result of the struggle, he cut her hand, and cut it severely, so that it injured the nerve of at least one of the fingers. The testimony of the complaining witness was that 'we did have sexual intercourse,' and there was no question about the type of inter-

---

be reversible error to allow the jury to infer penetration from evidence that the prosecutrix's clothes were torn off and that defendant was on top of her.) We note, however, that the prosecutrix in that case never testified that any act of intercourse had occurred.

course, from the way she described it, the way the young boys who came upon the scene described it, and the way the police officers described it; particularly Officer Dennis Simoneau, who had to pull the man away from the woman's body when he was lying on top of her. This man was having sexual intercourse with this woman when the boys, Alan _____ and Eric _____, saw the act taking place.

"There is no question about the weight of the evidence in this case. I know that if I had been hearing the case without a jury, unquestionably I would have found the defendant guilty of both rape and assault with a dangerous weapon. We did have a few other witnesses who testified, but I don't really think it would be essential that I comment upon them. The testimony of Dr. DeFanti and Lieutenant Powell was certainly credible. The case was proved by competent evidence. The witnesses of the State were credible, and as I indicated, if I had been hearing this same testimony without a jury I would have found the defendant guilty on both counts."

In addressing defendant's contention that the denial of his motion was based upon impermissible inferences, we first note that an "inference" is a deduction that the trier of fact is entitled to make from a proven or admitted fact. An inference must be based upon some evidence, direct or circumstantial; however, a conclusion made in absence of such evidence is not an inference, but rather pure conjecture. *In re Pereira*, 111 R.I. 712, 715, 306 A.2d 821, 823 (1973); *State v. Koohy*, 105 R.I. 197, 202, 250 A.2d 711, 714 (1969). It is clear from the above discussion of the facts and law relating to the issue of penetration that the trial justice was entitled, at the very least, to infer from the testimony adduced at trial that penetration did occur.[5] There was an abundance of circumstantial evidence from which the trial justice could properly draw such an inference. Indeed, it is rare to have a prosecution for rape in which three eyewitnesses testify that they saw the defendant in the perpetration of the act. Such testimony should not be ignored.

The evidence upon which the trial justice relied in ruling on the motion was both probative and substantial. We conclude that the defendant has failed to sustain his burden of demonstrating to us that the trial justice erred in denying the motion for a new trial in that he overlooked or misconceived material evidence on a controlling issue or was otherwise clearly wrong. *See State v. Lewis*, 115 R.I. 217, 341 A.2d 744 (1975); *State v. Clark*, 114 R.I. 82, 328 A.2d 727 (1974).

The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.

SHEA, J., did not participate.

---

5. *See* the cases cited at pp. 5–6, *supra*.