**James A. NICHOLS,**
**Petitioner-Appellant,**

v.

**John R. GAGNON and Bronson La Follette, Respondents-Appellees.**

**No. 81–2914.**

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1983.

Decided June 29, 1983.

Rehearing and Rehearing En Banc Denied Sept. 12, 1983.

was following her and when she lost sight of the third car she became afraid, because he had made advances to her earlier in the evening. In an effort to evade him she turned by mistake into a dead-end street. She stopped her car and turned off the lights and ignition, hoping Nichols would not notice her. But he did. He stopped his car behind hers, got out, and came over to her car and began talking to her, renewing his earlier advances. She got out of the car and tried to run away. He attacked her. She fought him off, but when he began to choke her and threaten her with a knife, she stopped resisting, and Nichols attempted to have intercourse with her. He had difficulty achieving an erection but managed to penetrate her briefly. He then released her but ordered her to follow him in her car. She stopped her car at an intersection and ran into a bar, shouting, "This guy tried to kill me, tried to rape me. He tried to rape me; he raped me." She was cut and bruised.

Nichols testified as follows: He had indeed approached Mrs. Greenamyer after her car had stopped in the dead-end street, and asked her to have intercourse with him. She consented, but he was impotent and only put his finger in her vagina. She reacted with disgust and expressed fear that her husband would find out about the incident. He then left.

In 1975 a jury found Nichols guilty of rape and other offenses. He was sentenced to 20 years for rape and an additional two years for endangering safety by conduct regardless of life. After exhausting state remedies he brought this federal habeas corpus action in 1980, and he appeals from the denial of his petition. (He was paroled recently after serving 7½ years in prison, but of course that does not moot this action.) The only issue we are asked to decide is whether the trial judge's refusal to instruct the jury on the lesser included offense of attempted rape was an error of constitutional magnitude.

Richard D. Martin, State Public Defender, Madison, Wis., for petitioner-appellant.

Kirbie Knutson, Asst. Atty. Gen., Madison, Wis., for respondents-appellees.

Before PELL, POSNER and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

One evening in September 1974 James Nichols was drinking in a bar in Milwaukee with a group that included Marie Greenamyer. Although she was married, her husband was not present. The group decided to leave for another bar. Nichols and Mrs. Greenamyer drove separate cars; the rest of the group was in a third car. According to Mrs. Greenamyer's testimony, Nichols

 Under the law of Wisconsin an instruction on a lesser included offense is

proper only if there is a reasonable basis in the evidence for conviction of that offense. "To give an instruction on a lesser included offense when the commission of that lesser included offense is not reasonably shown by the evidence is no favor to a defendant. The inclusion of a doubtful lesser included offense is likely to result in a jury's compromise to the detriment of the defendant." *Ross v. State,* 61 Wis.2d 160, 170, 211 N.W.2d 827, 832 (1973). "[T]he evidence is to be viewed in the most favorable light it will 'reasonably admit of from the standpoint of the accused.' This test does not call for a weighing of the evidence by the trial judge. He is merely obliged to examine the evidence to determine whether the proposed instruction is based upon mere conjecture and whether, if a verdict were returned on the lesser included offense, he would be obliged to set it aside.... To instruct on the lesser included offense, ... the evidence of the lesser included offense must be relevant and appreciable; and as considered most favorably to the defendant, the inclusion of the instruction must not be unreasonable." 61 Wis.2d at 172–73, 211 N.W.2d at 833. The rule in federal criminal trials, and in virtually all the states, is the same or similar. See *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *Beck v. Alabama,* 447 U.S. 625, 636 n. 12, 100 S.Ct. 2382, 2389 n. 12, 65 L.Ed.2d 392 (1980). The Wisconsin Supreme Court concluded that it would have been unreasonable for the jury to have convicted Nichols of attempted rape, but the court did not explain the basis for its conclusion.

■ Nichols does not question the constitutional adequacy of the Wisconsin standard (nor could he after *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); see also *Bell v. Watkins,* 692 F.2d 999, 1004 (5th Cir.1982)), but only the application of the standard to the facts of his case. He argues that the jury might have believed on the one hand that he had tried to rape Mrs. Greenamyer and on the other hand that he had not succeeded—might in other words have believed all of Mrs. Greenamyer's testimony except on penetra-

tion. The state rejoins that since Nichols' testimony did not support a theory of attempted rape—he denied having coerced her at all—and since Mrs. Greenamyer's testimony was that she had been raped, there was no evidentiary basis for convicting Nichols of attempted rape. We disagree. Since both testified to Nichols' difficulty in achieving an erection, the evidence that Mrs. Greenamyer was forced was inherently stronger than the evidence that she was raped. And when she first told of the incident she said twice that Nichols had *tried* to rape her. (This is ambiguous, though; she may not have realized that even slight penetration is enough to constitute rape.)

■ If it were our duty to decide whether there was a reasonable evidentiary basis for an instruction on attempted rape, we would hold there was; but it is not. A federal court in a habeas corpus proceeding brought by a state prisoner does not sit to correct errors in the application of state law. *Carbajol v. Fairman,* 700 F.2d 397, 401 (7th Cir.1983). In *United States ex rel. Peery v. Sielaff,* 615 F.2d 402, 404 (7th Cir.1979), therefore, we joined several other circuits in holding that failure to instruct on a lesser included offense, even if incorrect under state law, does not warrant setting aside a state conviction unless "failure to give the instruction could be said to have amounted to a fundamental miscarriage of justice." It could not here. Although as an original matter we think Nichols was entitled under the standard enunciated in *Ross v. State* to an instruction on the lesser included offense of attempted rape, it is a close question and we cannot say that the Wisconsin Supreme Court was unreasonable to resolve it against him, or that the denial of the instruction in the circumstances of this case was likely to have resulted in the conviction of an innocent man.

But we must consider whether *Peery* can survive *Beck v. Alabama, supra,* 447 U.S. at 638, 100 S.Ct. at 2390, where the Supreme Court held that "if the unavailability of a lesser included offense instruction enhances

the risk of an unwarranted conviction, [the state] is constitutionally prohibited from withdrawing that option from the jury in a capital case." We followed *Peery* in the post-*Beck* case of *Davis v. Greer,* 675 F.2d 141, 145 (7th Cir.1982), but without discussing the possible bearing of *Beck.* Applied here, the "risk enhancement" test of *Beck* might seem to require setting aside Nichols' conviction. Although one might think that omitting a lesser included instruction would increase the probability of acquittal rather than of conviction of the more serious offense, this was not the Supreme Court's view in *Beck:* "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction." 447 U.S. at 637, 100 S.Ct. at 2389.

*Beck,* however, involved a statute that forbade giving an instruction on a lesser included offense (in any capital case) no matter how strong the evidence of the defendant's guilt of the lesser included offense. A jury forced to choose between conviction and acquittal in a case where it is certain that the defendant is guilty of a serious crime—Beck's own testimony showed he was guilty of felony murder, the lesser included offense in that case—may decide to convict him of the offense charged even if it has a reasonable doubt that one of the elements of that offense (the element, in this case penetration, that is not part of the lesser included offense) was actually proved. But it was not certain that Nichols was guilty of any crime. The jury could have believed his story and if it had it would have acquitted him of the very serious offense with which he was charged. The choice facing the jury was to convict Nichols of a crime not every element of which the jury might have thought proved beyond a reasonable doubt or to acquit him; and since there was substantial evidence for

acquittal the choice was not loaded against the defendant, as it was in *Beck* where there was no reasonable probability of the defendant's innocence. To give a lesser-included-offense instruction in a case where there is substantial evidence of complete innocence could easily reduce the probability of acquittal, by offering the jury the attractive compromise of finding the defendant guilty of the lesser offense.

Purely for the sake of illustration, assume that in *Beck* the probability that the jury would convict the defendant of capital murder if there was no lesser-included-offense instruction was 90 percent and the probability of acquittal 10 percent, but that if the lesser-included-offense instruction (felony murder) had been given the probability of conviction of capital murder would have been 50 percent, of felony murder 45 percent, and of acquittal 5 percent. On these assumptions Beck might well have been harmed by the failure to instruct on the lesser included offense. Assume that in the present case, with no lesser-included-offense instruction given, the probability of conviction was 60 percent and of acquittal 40 percent, but that if the instruction had been given the probability of conviction of rape would have been 40 percent, of conviction of attempted rape 50 percent, and of acquittal 10 percent. Weighing the greatly reduced probability of acquittal if the instruction was given against the enhanced probability of a shorter sentence if he was convicted, Nichols might think himself better off without the instruction. Of course these figures are conjectural but they illustrate why it is less clear here than in *Beck* that the defendant was hurt by the omission of the instruction.

Another ground for distinguishing *Beck* is that the greater offense in that case was capital (robbery when the victim is intentionally killed). This fact is emphasized throughout the Supreme Court's opinion, see *id.* 447 U.S. at 637–43, 100 S.Ct. at 2389–92, and the applicability of its holding to noncapital cases is expressly reserved, *id.* at 638 n. 14, 100 S.Ct. at 2390 n. 14.

Although the Court may some day decide to extend the rule of *Beck* to noncapital cases, we are not inclined to anticipate its doing so. *Beck* vindicated no specific right found in the Bill of Rights and applied to the states through the due process clause of the Fourteenth Amendment. The only right asserted was the right not to be erroneously convicted because the instructions might have induced the jury to find guilt even if one element of the crime had not been proved beyond a reasonable doubt. The right not to be erroneously convicted is, surprising to say, something of a novelty in constitutional criminal procedure. The proposition that "innocence is not irrelevant" was advanced in Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142 (1970), in an effort to reduce the inundation of the federal courts with collateral attacks on convictions, rather than to establish a new ground for such attacks. But it had, we conjecture, the unintended consequence of encouraging the Supreme Court to create in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a completely new office for the federal courts in habeas corpus proceedings—reviewing the sufficiency of the evidence in the petitioner's trial to make sure that a rational trier of fact could have found him guilty beyond a reasonable doubt. This is similar to the standard that an appellate court would use on direct review of a criminal conviction, which is why one sometimes finds *Jackson v. Virginia* being cited as describing the standard we use on direct appeals from federal criminal convictions. See, e.g., *United States v. Tranowski,* 659 F.2d 750, 757 (7th Cir.1981). *Jackson* has changed the role of the federal court in a habeas corpus proceeding brought by a state prisoner from that of just deciding specific federal constitutional questions to that of giving the prisoner virtually a second appeal—at least on the sufficiency of the evidence to prove each of the elements of the crime beyond a reasonable doubt, see *Greider v. Duckworth,* 701 F.2d 1228, 1235–36

(7th Cir.1983) (concurring opinion)—from his conviction.

The concern underlying *Jackson v. Virginia*—assuring that the innocent are not convicted—cannot be faulted. But it is unclear to us why the state courts cannot be fully trusted to prevent such an outrage. To be concerned that state courts might not give so much weight to federal constitutional rights as federal courts do (though there is considerable doubt that this is true today, whatever the situation may once have been) is one thing; to think that state judges have any less concern than federal judges with avoiding the conviction of the innocent is another. The innocent are not a despised and vulnerable minority who need the protection of the federal courts.

*Beck* is a case in the *Jackson* tradition in that it deals not with a specific constitutional right but with the danger of convicting an innocent person. Since the consequences of such an error are so appalling where the sentence upon conviction is death, *Beck* is an understandable extension of the *Jackson* principle, and understandable or not is of course binding on us. But we are wary of making further extensions on our own initiative. *Jackson* goes far, as we have said, toward making the federal habeas corpus court just a second appeals court, performing no distinctively federal function. If *Beck* must be generalized to noncapital cases—if we must decide whether in any such case a lesser-included-offense instruction was correctly refused—how shall we avoid having to determine every other issue of state procedure that might have a bearing on the accuracy of the state court's determination of guilt?

Finally, even if *Beck* is some day extended to noncapital cases, there will still be the question what the standard of collateral review is. Because the statute in *Beck* forbade giving a lesser included instruction in a capital case no matter what the circumstances, the Supreme Court did not have to decide how much deference to give a state court's determination that the circumstanc-

es did not warrant such an instruction. Despite *Jackson v. Virginia,* the Court might adopt a deferential standard in recognition of the fact that giving such an instruction often harms rather than helps the defendant's chances of acquittal, and of the too little stressed fact that state courts have the same incentives as federal courts not to allow innocent people to be convicted.

■ To transform the federal courts in the exercise of their habeas corpus jurisdiction from enforcers of specific constitutional rights to guarantors of the accuracy of state court determinations of guilt would enmesh the federal judiciary in almost every detail of state criminal procedure and every trial ruling, and we would regularly have to review failures to instruct on lesser included offenses under state law as well as decide other issues unrelated to a specific federal constitutional safeguard. We shall decline this task until directed to take it up by our judicial superiors. Since one of the rights of criminal defendants under the due process clause of the Fourteenth Amendment is to be tried according to the fundamental contemporary norms of civilized procedure, *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), we shall continue to review failures to instruct under the standard of *Peery*—fundamental miscarriage of justice. But there was none in this case, so the judgment denying Nichols' petition for habeas corpus is

AFFIRMED.

COFFEY, Circuit Judge, concurring.

I join the opinion of the court in affirming the denial of Nichols' petition for a writ of habeas corpus. I write separately because I fail to understand how the trial court committed an error, let alone an error of "constitutional magnitude", in failing to give to the jury the attempted rape instruction requested. Once a defendant has been convicted of a crime in a state court and has gone through the state appellate system and has had that conviction affirmed, ab-sent a violation of the defendant's constitutional rights, federal courts should not substitute their judgment for that of the highest court of the state. It is unnecessary for this court to address constitutional issues that need not be considered in the resolution of the instant appeal. Such constraint lends stability to our decisions and "lessens the threat of 'untoward practical ramifications' . . . not foreseen at the time of decision." *Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2325, 76 L.Ed.2d 527 (1983) (citation omitted).

In order to state a cognizable habeas corpus claim, a petition must allege that the trial court's instructions deprived the petitioner of a constitutionally protected right. 28 U.S.C. section 2254(a). *See Davis v. Greer,* 675 F.2d 141, 144 (7th Cir.1982). In his application to the federal district court, Nichols challenged his conviction for rape on the ground that his due process rights were violated when the trial court refused to instruct the jury on the lesser included offense of attempted rape. From my review of the record, I am convinced that the petitioner's due process rights were in no way violated and the petitioner's application for a writ of habeas corpus was properly denied by the district court.

In *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court held that a sentence of death could not be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of a lesser included non-capital offense, *provided that the evidence would have supported such a verdict.* The Court in *Beck* expressly reserved judgment on whether the due process guarantees of the Constitution required the giving of lesser included offense instructions in non-capital cases. We need not decide this question as even assuming *Beck* applies to the instant case it is clear that the Wisconsin law pertaining to lesser included offense instructions in effect at the time of Nichols' trial, and in effect today, conforms with applicable constitutional standards.

In *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the Court had an opportunity to review *Beck* in another capital case. The Court reiterated that:

"The *Beck* opinion considered the alternatives open to a jury which is constrained by a preclusion clause and therefore unable to convict a defendant of a lesser included offense when there was evidence which, if believed, could *reasonably* have led to a verdict of guilt of a lesser offense."

102 S.Ct. at 2052 (emphasis added).

"*Beck* held that [in a capital case] due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence. Under Alabama law, the rule in non-capital cases is that a lesser included offense instruction should be given if 'there is any reasonable theory from the evidence which would support the position' ... *The Alabama rule clearly does not offend federal constitutional standards,* and no reason has been advanced why it should not apply in capital cases."

102 S.Ct. at 2049 (emphasis added).

Likewise, it is clear that the Wisconsin rule (concerning the inclusion of a lesser included offense instruction) applied to Nichols does not offend the applicable federal constitutional standards. The standard to be applied in Wisconsin in determining whether a "lesser included" instruction should be given to a jury was clearly stated in *Ross v. State,* 61 Wis.2d 160, 169, 211 N.W.2d 827, 831 (1973). The majority purports to recognize *Ross* as controlling but only paraphrases the standard for inclusion of a lesser included offense instruction stating that "[u]nder the law of Wisconsin an instruction on a lesser included offense is proper only if there is a reasonable basis in the evidence for conviction of that offense." The majority's paraphrase is simply not a complete statement of the appropriate state standard set forth by the Wisconsin Supreme Court in *Ross* and subsequently reaffirmed in *State v. Williford,* 103 Wis.2d 98, 307 N.W.2d 277 (1981), because it completely ignores one of the two sub-issues involved. Contrary to the majority opinion, under the law of Wisconsin "there must be *a reasonable ground* in the evidence *for acquittal on the greater charge* and *for conviction on the lesser charge,*" *Ross,* 61 Wis.2d at 169, 211 N.W.2d 827 (emphasis added), to justify submitting a lesser included charge.

This rule, however, does not suggest that submission of lesser included offenses is automatic upon request:

"The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to the jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower should the lesser crime also be submitted to the jury ..."

*State v. Bergenthal,* 47 Wis.2d 668, 675, 178 N.W.2d 16 (1971), *cert. denied,* 402 U.S. 972, 91 S.Ct. 1657, 29 L.Ed.2d 136 (1971).

As noted by the district court in denying Nichols' habeas request:

"At the petitioner's trial he testified that the woman whom he was accused of raping agreed voluntarily to have intercourse with him but he was unable to achieve an erection. The woman testified that the petitioner forced her to submit and that penetration was accomplished although the petitioner's erection was weak. The petitioner's argument is that the jury might have believed the woman's testimony that she was forced, but have also believed his testimony that he was

unable to achieve an erection, and under those circumstances that an instruction on attempted rape was appropriate.

The district court concluded that it would have required "an unlikely construction of the evidence for a reasonable jury" to have accepted the petitioner's argument. I agree that it was unlikely that a reasonable jury would have accepted the petitioner's convoluted assessment of the facts. I am confident that the evidence presented at trial certainly did not supply "*a reasonable ground ... for acquittal on the greater charge* and *for conviction on the lesser charge.*" *Ross,* 61 Wis.2d at 169, 211 N.W.2d 827 (emphasis added).

Throughout his testimony, the petitioner maintained that the complainant readily and voluntarily complied with his sexual advances. At no time, according to Nichols, did the complainant resist or struggle. According to the testimony of the complainant, her encounter with the petitioner constituted rape (penetration achieved by force and without the victim's consent, *Baldwin v. State,* 59 Wis.2d 116, 122–23, 207 N.W.2d 630 (1973)). The testimony of the petitioner, if believed, provided a complete defense to a rape charge (consensual involvement). I cannot agree with the majority's acceptance of the petitioner's hybrid account of the encounter noting that "[s]ince both testified to Nichols' difficulty in achieving an erection, the evidence that Mrs. Greenamyer was forced was inherently stronger than the evidence that she was raped." Such mental gymnastics are not consistent with Wisconsin's long-accepted reasonable evidence test for the inclusion of lesser included offense instructions nor required by a logical reading of the Due Process Clause of the Constitution.

It is well-settled that when the evidence, considered in its entirety, does not provide a rational basis for a jury to acquit on the greater charge and convict on the lesser charge, the trial court should exclude the lesser-included instruction. *See United States v. Neiss,* 684 F.2d 570, 571 (8th Cir.

1982) and *United States v. Elk,* 658 F.2d 644, 648 (8th Cir.1981).

In *United States v. Sinclair,* 444 F.2d 888, 890 (D.C.Cir.1971), the court stated that the "refusal to give the lesser-included offense instruction is not error when [the] defendant's testimony is completely exculpatory and, if believed, could only lead to acquittal." The situation referred to by the *Sinclair* court is exactly that which is presented herein. Thus, there was no rational basis in the instant case for instructing the jury on the lesser included offense of attempted rape and hence I find no error and agree with the trial court's refusal to give the requested instructions. *See United States v. Collins,* 652 F.2d 735, 742 (8th Cir.1981). Neither due process nor any other constitutional guarantee is offended by a trial judge's refusal to charge the jury on a matter not reasonably supported in the evidence. *See Hallowell v. Keve,* 555 F.2d 103, 107 (3d Cir.1977).

Additionally, only limiting review in the instant case to the standard enunciated by this court in *United States ex rel. Peery v. Sielaff,* 615 F.2d 402, 404 (7th Cir.1979) (per curiam), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794, *reh'g denied,* 448 U.S. 912, 101 S.Ct. 29, 65 L.Ed.2d 1174 (1980), and reiterated in *Davis v. Greer,* 675 F.2d 141 (1982), it is clear that Nichols' petition was properly denied by the district court. The evidence presented to the jury was insufficient to support a lesser included jury charge of attempted rape, and the trial court did not err in refusing to give the defendant's tendered instruction. Nichols has failed to prove that the evidence of a forcible, non-consensual attempt at intercourse was "so unequivocally strong that [the] failure to give the instruction amounted to a fundamental miscarriage of justice." *Davis,* 675 F.2d at 145.