[Crim. No. 8036. Second Dist., Div. Two. July 27, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. IRA THOMAS WRIGHT, Defendant and Appellant.

Ellery E. Cuff, Public Defender, Charles A. Maple and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Calvin W. Torrance, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Appellant was charged by information in two counts of having burglarized "the gas station and building occupied by George B. Wright," his father. He pleaded not guilty and was convicted on count II of second degree burglary. He appeals from the judgment rendered and from the order denying his motion for a new trial. The evidence established that appellant entered a building not for the purpose of stealing property therein contained but in order to gain access to an adjoining structure which is claimed not to be a subject of burglary under Penal Code section 459,[1] and to take property contained in that structure. Appellant contends as follows: (1) The court erred in permitting the prosecution

---

[1]Penal Code, § 459: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, railroad car, trailer coach as defined by the Vehicle Code, vehicle as defined by said code when the doors of such vehicle are locked, aircraft as defined by the Harbors and Navigation Code, mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary."

to strike from the information the word "therein" occurring in the allegation of an "intent then and there and therein unlawfully and feloniously to commit theft"; (2) the amended information failed to state an offense without the stricken phrase; and (3) the evidence does not support a conviction of burglary.

Defendant did not testify. George B. Wright, appellant's father, testified that he owned a "tire shop" in partnership with John Childs. On Monday morning, May 8, he discovered that someone had broken into his shop through a window and had taken four tires. He had not given anyone, including his son, permission to enter the shop over the weekend or to take tires. He left the shop about 7:30 or 8 Monday night, having nailed shut the above-mentioned window. Later that evening, he received a telephone call from a boy named Larry, informing him that someone was in his shop taking tires. He returned to the shop and discovered the same window had again been broken. It was open and partly broken. Two tires were missing. Again no permission had been given to his son to enter the building. On cross-examination, Mr. Wright testified that his son worked for him during the day in the shop.

He described the shop as a "shed" with an office attached. The office had four walls and a roof, with a door leading to the adjacent shed; that door was in a wall to which the shed was attached. The office contained the window which had been broken. The shed was the "main part" of the tire shop and it contained the tires which were taken. It had a roof and three walls but the record is in such shape that it cannot be said that it had a fourth wall; the inference is that the fourth side was open. It seems to have resembled the aluminum bin which had three sides and a roof and had an open side facing upon a yard which was fenced, and held in *People* v. *Gibbons,* 206 Cal. 112 [273 P. 32] to be not a structure falling within the burglary statute.

Mr. Wright had two German Shepherd dogs on the premises at the time who were friendly to him, his son and Mr. Childs, but vicious toward all other people. "Larry" is Larry Russell who lives across an alley adjoining the tire shop. Appellant's duties in the shop were to change tires on cars that came in. Russell testified that at about 8 p. m. on May 8, 1961, he heard a crash and looked out his window. He observed appellant entering the window to the office building. Appellant "was beginning to get some tires" and Russell opened his door. Appellant saw him and ran, escaping over the fence. Russell

also observed an automobile "just off" the alley separating the shop from his house. Three people were in it. The witness could see appellant through the fence, and by the light of a lamp in the shop. When appellant started to run, the car drove off. The dogs made no noise at all at the time of the witness' observations. Apparently the wall of the shop facing Russell's house is part concrete and part wire fence, the concrete being 3½ feet high and the rest wire. He observed appellant through the wire. The car outside was a 1960 Thunderbird.

John Childs, George Wright's partner in the tire shop, testified that he did not give appellant permission to enter the tire shop or remove tires on May 8. He confirmed his partner's testimony as to the missing tires.

The investigating officer testified as follows: "I asked the defendant if he knew why he was in jail. He said that he knew he was there on a charge of burglary. I asked him if he committed these burglaries and he said that he didn't know anything about them. I asked him why in the past he had done the same thing, burglarized his father's business. He said that he didn't know why he had did it before, that—— 'Well,' he says, 'I may as well tell you.' He says, 'Yes, I broke into my father's tire shop.' I said, 'Well, why did you do it?' He says, 'I don't like my father. I have never liked him. We have never gotten along and I needed some money.' I says, 'On Sunday night was that the first time that you broke into the shop?' And he said, 'Yes, it was.' I asked him how he broke in. He said he went to the rear window of the office, that he didn't have to force it very hard, the latch was loose, and he pushed the window open and entered. That on that occasion he took four tires. That he left with them and that he sold them to different people in the street. I asked him if he had returned there on the Monday night and again broken into the shop. He said, 'Yes, I did.' On that occasion he said, 'I was over at the Champagne Room at about 96th and Broadway. I met two or three fellows there that was in a Thunderbird. I told them I knew where I could get some tires. They said they'd like some. So we went over to my father's shop. They parked the Thunderbird in the rear. I again went to the rear window at the office and this time I had to break it open. I entered. I took two tires and handed them over the side fence to these men.' He said, 'Then they took off and,' he says, 'that's the last I saw of them.' Q. Is that the gist of your conversation? A. Yes, it is." This concluded the testimony.

■ The questions whether the information as amended states an offense and whether the evidence supports the conviction may be answered together. Counsel have proceeded upon the assumption that the "shed" is not a structure that may be burglarized under section 459 of the Penal Code. That section reads: "Every person who enters any house [and numerous other structures and enclosures], with intent to commit grand or petit larceny or any felony is guilty of burglary." The statute does not require that the larceny or felony take place "therein." It is appellant's contention that that word should be read into the statute, otherwise absurd results would obtain from a literal reading. Examples are set forth: One wishes to steal an object from an unlocked automobile (which must be locked under § 459) and toward that end enters a hardware store to buy rubber gloves and a screw driver; one passes through a building to steal an object on the other side. Appellant contends that unless the word "therein" is read into the statute, the crime of burglary will have been committed in those instances. The People argue that it is sufficient to show that the accused intended to commit a theft or other felony in a nearby place and that he entered the building for the purpose of gaining access to that place; or phrased differently, there need be only a direct causal connection between the entry and the theft or felony.

The question has not arisen frequently. Professor Perkins, in his treatise on Criminal Law, has this to say: "Some definitions of burglary, after listing the elements mentioned above, add with intent and so forth 'therein.' This wording emphasizes the necessary causal relation between the burglarious intent and the forced entrance, but seems to inject an unnecessary limitation. While it would not be burglary to break into another's dwelling at night merely to rest in preparation for a felony to be perpetrated elsewhere, it would be burglary, if the purpose was to use the building as a place of concealment from which to shoot an enemy as he passed by on the street, although under well-recognized rules the situs of such a murder would be in the street at the point where the bullet hit the victim, and not the place inside the house from which the shot was fired." (Perkins, Criminal Law (1957) 168.)

In *People* v. *Shields*, 70 Cal.App.2d 628 [161 P.2d 475], the court dealt with the problem presented at bar. Defendant entered a building with a small child, went to the roof, and there violated section 288 of the Penal Code. There was no evidence that he intended at any time to commit the crime

within the building. Although the opinion did not analyze the problem presented, it concluded that the evidence nevertheless supported the verdict of burglary. Page 637: ''Counsel argues that, 'The assault, if any was committed, occurred on the roof of the apartment house. . . . The house or building within the meaning of the burglary statute must be a structure with walls on all sides and covered by a roof. (*People* v. *Stickman* (1867) 34 Cal. 242.) Therefore, an assault committed upon a roof would not be an assault while in the commission of burglary, a roof not being covered by a roof and bounded by four walls.' *A sufficient answer to this argument lies in the statute itself*. The Bellevue Apartments are a building. Moreover, it has walls on all sides and is covered by a roof. Appellant entered it. Did he at that time have the intent to commit a felony? From the fact that the jury found him guilty of violating section 288 of the Penal Code it is apparent that they also found that he had the intent to commit that crime when he entered the building.'' (Emphasis added.) This decision appears to be sound and the Supreme Court denied a hearing. Here we have an unlawful entry of a structure within the statute, made for the purpose of gaining access to an adjacent place in order to commit larceny at the second location. These acts appear to be within the legislative meaning of section 459.

Another persuasive case is *State* v. *Charette*, 98 N.H. 477 [103 A.2d 192]. The cabin and restaurant hereinafter mentioned were within a settlement known as Indian Head Village which was owned and operated by the Estate of Gordon. The Hudons were lessees of the restaurant and of the cabin occupied by them. Defendant and another entered the cabin for the purpose of obtaining the combination to the safe in the restaurant which was 100 yards from the cabin. This having been accomplished a scuffle ensued, one man was killed and another wounded. Defendant was prosecuted for burglary and convicted. On appeal he urged ''that he should be discharged since the intent must be to commit larceny within the cabin or dwelling-house and in this case the evidence disclosed that the intent was to commit larceny in the restaurant which was some one hundred yards from the cabin. This proposition was accepted by Blackstone and by the early common-law decisions which quoted him as an authority. 4 Bl.Com. 294; *State* v. *Sampson*, 12 S.C. 567 [32 Am.Rep. 513]. It was then considered that the larceny committed or intended to be committed must be within the dwelling house itself or some other build-

ing within the same common fence or enclosure which was defined as the curtilage. (Clark & Marshall, Crimes (1952) § 406.)

"The present day test, however, is much broader. Anno. 20 A.L.R. 234, 236. Outbuildings which are directly and intimately connected with the habitation and in proximity thereto are entitled to the same protection as the dwelling-house itself. See 9 Am.Jur., Burglary, § 24. Such outbuildings have the same status as dwelling-houses within the meaning of the law of. burglary. The statute under which the respondent was indicted carries the same penalty whether the breaking and entering occurs in a dwelling-house or in a 'shop' or in a 'store.' R.L. c. 453, § 2. The restaurant in this case was a shop or store within the meaning of that statute. The breaking and entering of the cabin with the intent to commit larceny at the nearby restaurant, which was an integral part of the Indian Head Village, was burglary of a dwelling-house within the meaning of our statutes. R.L. c. 453, §§ 2, 7. The legal effect is the same whether the respondent broke and entered the dwelling-house or cabin with the intent to steal in the restaurant or had broken into and entered the restaurant with intent to steal in the dwelling-house or cabin. While no cases directly in point have come to our attention, the conclusion is not doubtful." (P. 193 [103 A.2d].)

The foregoing cases apply the same basic concept as that of the curtilage or messuage in the common law burglary, when the dwelling was the only subject of burglary and it gathered under its wing all the outbuildings (cf. *People* v. *Stickman*, 34 Cal. 242, 244; 9 Am.Jur. § 24, p. 253; 2 Wharton's Criminal Law and Procedure (Anderson) § 424, p. 46; Note 78 A.L.R.2d 780).

The case of *People* v. *Garrow*, 130 Cal.App.2d 75 [278 P.2d 475], cited by appellant, is not in point. Although the word "therein" is used throughout the opinion, in that case the theft did take place in the room that was entered. The question before the court was whether an instruction adequately informed the jury that the intent required must exist at the time of entry, and that it must be an intent to permanently deprive a person of his property. It was held that the instruction given was so confusing as to warrant a new trial.

Nor is *United States* v. *Williams* (D.C.S.C.) 57 F. 201 in point. In that case appellant challenged a federal indictment for burglary of a post office, which followed the wording of the statute. He was charged with having entered a building

used in part as a post office "with the intent to commit therein larceny." He contended that the charge was so broad as to include larceny within a portion of the building not used as a post office and therefore, the indictment did not state a federal offense. The word "therein" was construed as meaning "in the post office" and the statute and indictment were therefore upheld.

A later federal case, United States v. Clifton (D.C.E.D. Ark.) 91 F.Supp. 940, was governed by 18 United States Code section 315 (1940 ed.), reading: "Whoever shall forcibly break into or attempt to break into any post office, or any building used in whole or in part as a post office, with intent to commit in such post office, or building, or part thereof so used, any larceny or other depredations, shall be fined not more than $1,000 and imprisoned for not more than five years." At pages 941-942, the court said: "We are of the opinion that to make out an offense under this statute, with respect to a building used in part as a post office, two things are necessary: First, a forcible entry or attempted entry into some part of the building. Second, an intent to commit larceny or other depredation in the part of the building used as a post office, which intent must exist at the time the forcible entry or attempt is made. But we do not deem it essential that the original illegal entry into the building be into the part thereof used as a post office. Given the intent to commit larceny or other depredation in the post office part of the building, it is immaterial at what part of the building entrance is effected."

We consider the true rule to be that within the purview of section 459, Penal Code, the intent to commit larceny or any felony is not confined to an intent to commit the crime in the building which is entered if the intent at the time of entry is to commit the offense in the immediate vicinity of the place entered by defendant; if the entry is made as a means of facilitating the commission of the theft or felony; and if the two places are so closely connected that intent and consummation of the crime would constitute a single and practically continuous transaction. Here the entry was made in a building to which the entire shed was physically attached and with intent to steal immediately the tires in the vicinity of the place of entry. That is enough to constitute burglary.

Appellant also claims that the striking of the word "therein" from the information on the second day of a two-day trial denied him the opportunity to argue and present his

defense to the jury, thereby depriving him of due process. His position is expressed in the following quote: "In the instant case, if the court had not struck the word 'therein,' it is probable that defendant would have testified as to what his intent was. It can reasonably be inferred that since he worked in the tire shop that he knew where the tires were located. Also, his words to the officer that he entered to secure some tires for two or three fellows that he met in a Thunderbird indicated an intent to commit theft in a location other than the small office building." It may be observed that appellant is not contending that he was misled in any way or that he was deprived of an opportunity to defend against the ultimate charge and evidence offered thereunder. His argument is merely that he was not permitted to testify that he didn't intend to take anything from the office, and that he was not permitted to argue this point. Since this testimony and argument would not have constituted a defense under the facts of this case, the intent to commit larceny in the adjacent structure being sufficient, the contention appears to be without merit.

Section 1009 of the Penal Code states: ". . . The court in which an action is pending may order or permit an amendment of an . . . information . . . for any defect or insufficiency at any stage of the proceedings. . . . [T]he trial . . . shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination."

We do not know whether the offense ultimately charged was "not shown" by the evidence at the preliminary examination, for we do not have the transcript of that proceeding in the record. If appellant places his argument on this ground, it was his duty to have such a transcript prepared. In the absence of such a transcript, we must "assume the amendment did not change the offense to one not shown in the evidence taken. . . ." (*People* v. *Walker,* 170 Cal.App.2d 159, 163 [338 P.2d 536].) If defendant's argument is based on the "substantial rights" provision in the statute, he did not move for a continuance and therefore waived the point. (*People* v. *Franklin,* 202 Cal.App.2d 528, 532 [21 Cal.Rptr.

29].) Moreover, his complaint is that the effect of the amendment was to deprive him of an argument that he had no intent when entering the office to commit theft therein,—an argument which must have failed under a correct interpretation of the statute. His being deprived of such a contention could not prejudice him.

The judgment and order denying new trial are affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 26, 1962.