[No. A019552. First Dist., Div. Two. May 16, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
BARRY L. NUNLEY, Defendant and Appellant.

226

---

## COUNSEL

R. Charles Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

---

## OPINION

**FLAHERTY, J.***—In this case we consider, among other issues, the question of whether a person, intending to burglarize an apartment, may be

---

*Assigned by the Chairperson of the Judicial Council.

convicted of burglary by merely entering the lobby of the apartment building where the apartment is located.

The facts of this case are not in dispute. On May 30, 1982, Frances Byrne and Tim Foremosa were returning to their apartment at 100 Alma Street in San Francisco at 6 p.m. The front door to the apartment building contains transparent glass and is at the head of an outside stairway. As Ms. Byrne ascended the steps she looked through the glass door and saw a man, later identified as defendant, standing by the door to her apartment. The man was standing on the bottom step of the inside stairs to the second floor and was prying open the door to apartment one with a silver object which looked like a screwdriver.

Mr. Foremosa opened the front door of the building with his key. Then both Ms. Byrne and Mr. Foremosa noticed that their apartment door showed signs of tampering. Almost all of the trim on the window of their door had been ripped off, and pieces of the wood were on the floor in front of the door. When Ms. Byrne entered the apartment she found that nothing had been disturbed.

Mr. Foremosa stayed outside the apartment and watched for the man who had gone upstairs. The man came downstairs, nervously picked up a newspaper and then walked out of the apartment building.

Mr. Foremosa followed the man out of the building, down the street and observed him get into a car. Mr. Foremosa noted the license number of the automobile, returned to the apartment and called the police.

Defendant was arrested the following day while driving his automobile. The arresting officer found a screwdriver, a glove and a cap on the floorboard in the front seat.

Defendant testified on his own behalf. He stated that while working as a cab driver in the early part of May, he dropped off a lady passenger named Patricia Johnson at 100 Alma. On May 30, the same lady telephoned and asked him to come to her apartment, apartment number 5, for dinner. He arrived at 100 Alma Street approximately 5 p.m., entered the building through the front door which was open,[1] then proceeded up the stairs searching for apartment 5. He knocked at apartment 5, but received no answer. He then went downstairs, picked up a newspaper, saw some people

---

[1]Although Mr. Foremosa testified that he had to unlock the front door of the apartment building with a key, he also stated that advertising periodicals were routinely thrown on the stairs to the apartments, indicating that access to the inside of the lobby could be effected by other than tenants of the building.

standing by a door and asked them what happened. When they failed to respond, he left the apartment and went to his car.

The prosecution presented two rebuttal witnesses. A yellow cab official testified that defendant had been terminated from employment on March 24, 1982. The occupant of apartment 5 testified that he had lived in the apartment for six years and that he never heard of Patricia Johnson.

Prosecution witness Joyce Roschinger testified that on April 20, 1982, she returned to her apartment building at 741 Balboa Street in San Francisco and found her front door open. The glass of the front door and the wood molding surrounding the glass had been removed. She found the glass and molding in a wastebasket in her apartment. Defendant's right thumb print was found on the glass pane. A television set and about $30 in cash had been taken from the apartment.

Based on these facts a jury found defendant guilty of burglary and attempted burglary of apartment one of 100 Alma Street. (Pen. Code, §§ 459, 664/459.) Defendant was sentenced to the upper base term of three years for the burglary and was given a one-year enhancement for each of two prior convictions for a total of five years. A one-year sentence for the attempted burglary was stayed. He timely filed an appeal from the underlying conviction and his sentence.

I

*Burglary Conviction*

■ Defendant contends that he cannot be convicted of burglary where he merely entered the lobby of an apartment building with the intent to burglarize a particular apartment. We disagree.

Section 459 of the Penal Code provides that "[e]very person who enters any . . . apartment, . . . or other building, . . . with intent to commit grand or petit larceny . . . is guilty of burglary."

In *People* v. *Gauze* (1975) 15 Cal.3d 709 [125 Cal.Rptr. 773, 542 P.2d 1365], a case addressing the question of whether a person can burglarize his own home, our Supreme Court explained the difference between California's burglary statute and the common law: "First, the statute greatly expanded the type of buildings protected by burglary sanctions. Not only is a person's home his castle under the statute, but so, inter alia, are his shop, tent, airplane, and outhouse. This evolution, combined with elimination of the requirement that the crime be committed at night, signifies that the law

is no longer limited to safeguarding occupancy rights. However, by carefully delineating the type of structures encompassed under section 459, the Legislature has preserved the concept that burglary law is designed to protect a possessory right in property, rather than broadly to preserve any place from all crime.

"The second major change effected by codification of the burglary law was the elimination of the requirement of a 'breaking': under that statute, every person who *enters* with felonious intent is a burglar. This means, at a minimum, that it no longer matters whether a person entering a house with larcenous or felonious intent does so through a closed door, an open door or a window. The entry with the requisite intent constitutes the burglary." (*People* v. *Gauze, supra,* 15 Cal.3d at pp. 712-713, italics in original, fns. omitted.)

Citing *People* v. *Lyles* (1957) 156 Cal.App.2d 482 [319 P.2d 745] and *People* v. *Staples* (1970) 6 Cal.App.3d 61 [85 Cal.Rptr. 589],[2] defendant initially argues that entry into an apartment house lobby with intent to burglarize a specific apartment is more properly characterized as an attempt to burglarize the apartment rather than a burglary of the lobby.

However, in *People* v. *Wright* (1962) 206 Cal.App.2d 184 [23 Cal.Rptr. 734], defendant entered an office of a tire shop in order to go through a door into an attached shed to steal tires in the shed. In addressing the question of whether mere entry into the office for the purpose of stealing property from the shed could be considered burglary, the *Wright* court reasoned as follows: "We consider the true rule to be that within the purview of section 459, Penal Code, the intent to commit larceny or any felony is not confined to an intent to commit the crime in the building which is entered if the intent at the time of entry is to commit the offense in the immediate vicinity of the place entered by defendant; if the entry is made as a means of facilitating the commission of the theft or felony; and if the two places are so closely connected that intent and consummation of the crime would constitute a single and practically continuous transaction." (*Id.*, at p. 191; see also, *People* v. *Nance* (1972) 25 Cal.App.3d 925, 931-932 [102 Cal.Rptr. 266].) Thus, California decisions have rejected the common-law notion of burglary which requires that a defendant enter premises with the intent to commit a crime "therein". (*People* v. *Guthrie* (1983) 144 Cal.App.3d 832, 845 [193 Cal.Rptr. 54].)

Defendant maintains that *Wright* is distinguishable from the instant case, since in *Wright* the office was private property whereas here the entry area of an apartment building is more in the nature of a public place.

---

[2]In neither *Lyles* nor *Staples* was defendant appealing from a burglary conviction. Rather, both cases reviewed judgments of attempted burglary.

Even if we assume that a locked entry into an apartment building is an area open to the public, which we do not, defendant's argument must fail. It is long settled that trespassory entry is no longer a necessary element of burglary. (*People* v. *Gauze, supra,* 15 Cal.3d at p. 713; *People* v. *Sears* (1965) 62 Cal.2d 737, 746 [44 Cal.Rptr. 330, 401 P.2d 938]; *People* v. *Deptula* (1962) 58 Cal.2d 225, 228 [23 Cal.Rptr. 366, 373 P.2d 430]; *People* v. *Brittain* (1904) 142 Cal. 8; *People* v. *Barry* (1892) 94 Cal. 481 [29 P. 1026].) Anyone who enters a building with the intent to commit a felony is guilty of burglary even though permission to enter has been extended to him personally or as a member of the public. (*People* v. *Sears, supra,* 62 Cal.2d at p. 746.) Thus, the current law is that one may be convicted of burglary even if he enters with consent, provided he does not have an unconditional possessory right to enter. (*People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649].)

While it is arguable as to whether a tenant in a particular apartment owns a possessory interest in the common entryway to the building, it is indisputable that the owner of the apartment building does. Any consent that the owner gives to the general public to enter the lobby is vitiated by the visitor's intent to commit larceny within the building.

■ Defendant claims that the evidence does not support the burglary conviction since there was no showing that he entered 100 Alma Street with the requisite specific intent to commit larceny. Although the prosecution must demonstrate that one accused of burglary entered the premises with intent to commit theft or any felony, intent is rarely susceptible of direct proof and may be inferred from the circumstances disclosed by the evidence. (*People* v. *Hopkins* (1983) 149 Cal.App.3d 36, 44 [196 Cal.Rptr. 609]; *People* v. *Walls* (1978) 85 Cal.App.3d 447, 452 [149 Cal.Rptr. 460].) Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal. (*People* v. *Matson* (1974) 13 Cal.3d 35, 41 [117 Cal.Rptr. 664, 528 P.2d 752]; *People* v. *Walls, supra,* 85 Cal.App.3d at p. 452.) Here, defendant entered the building with a screwdriver and was seen attempting to gain entry to apartment one by removing the molding on the front door. In addition, the evidence showed that one month prior to the instant offense, defendant had committed a burglary using a similar method of operation and had stolen a TV set and cash. Accordingly, there was substantial evidence to support the jury's verdict. (See *People* v. *Matson, supra,* 13 Cal.3d at p. 41; *People* v. *Poon* (1981) 125 Cal.App.3d 55, 73 [178 Cal.Rptr. 375].)

■ Defendant's other assertion, that his actions within 100 Alma Street constituted a single course of conduct which cannot support both a burglary and attempted burglary conviction, must also fail.

Section 654 of the Penal Code provides in part, "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ." This section is aimed against double punishment. It does not prevent double convictions. (See *People* v. *Bauer* (1969) 1 Cal.3d 368, 375-377 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]; *People* v. *Green* (1973) 34 Cal.App.3d 622, 654 [110 Cal.Rptr. 160]; *People* v. *Lyons* (1971) 18 Cal.App.3d 760, 780-781 [96 Cal.Rptr. 76].) In the present case, the trial court properly stayed the sentence for the attempted burglary.

II

*1974 Prior Conviction*

■ Defendant contends that use of his 1974 conviction for impeachment purposes was error. He argues that his conviction was too remote and that the prosecutor's question concerning the nature of the prior felony was improper.

At the beginning of trial, defendant requested a ruling on what felonies could be used against him if he took the stand, urging that the 1977 and 1978 burglary convictions should be excluded as being similar to the charged offense and attacking a 1974 robbery as being too remote. The court ruled that the two prior burglary convictions were inadmissible but that the 1974 robbery conviction could be used.[3] However, it limited use of the robbery conviction to a simple inquiry along the lines of "[I]sn't it true that

---

[3] In announcing its ruling the trial court stated: "Well, courts have held that robbery is a crime that involves dishonest conduct, as well as assault of [*sic*] conduct. So it should properly be considered for purposes of impeachment.

"There are more current convictions that would impeach the defendant for dishonest conduct, because the crimes involved dishonesty, to wit: burglary involving theft. But since he's being charged here with burglary, and attempted burglary, in fairness to the defendant, these more recent felonies not be used because of the great prejudice of—the jury may feel that—a jury may conclude that the knowledge that it would be indicative of propensities to commit burglaries; and since they're not being used, that the robbery should be allowed to be used, and I will allow it.

"And the Court doesn't find that there's remoteness in time in this situation; and that in using it, the robbery not be mentioned, but that he was found guilty of a felony which involved a crime of theft.

"I have considered the standards and I feel that it should be allowed, because it certainly is apparent that the defendant has not led a blameless life. This jury should not be misled if he takes the stand. Impeachment should be proper, and I will allow that '74."

you have a prior felony conviction for a crime of theft, a crime that involved theft?"[4]

Defendant's reliance on *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43] to support his claim that the 1974 robbery conviction was too remote to be used is misplaced. *Antick* involved convictions which were 17 and 19 years old. In contrast, defendant's conviction for robbery was only eight years old. Courts have approved admission of felonies four years old (*People* v. *Lassell* (1980) 108 Cal.App.3d 720 [166 Cal.Rptr. 678]), five years old (*People* v. *James* (1978) 88 Cal.App.3d 150 [151 Cal.Rptr. 354]), and six years old (*People* v. *Anjell* (1979) 100 Cal.App.3d 189 [160 Cal.Rptr. 669]; *People* v. *Boothe* (1977) 65 Cal.App.3d 685 [135 Cal.Rptr. 570], disapproved on another point in *People* v. *Brigham* (1979) 25 Cal.3d 283, 292 [157 Cal.Rptr. 905, 599 P.2d 100]). The prior conviction was not too remote.

■ Defendant also argues that the prosecutor committed misconduct when, after the court had limited use of defendant's 1974 conviction to a "crime that involved theft," the prosecutor specifically asked defendant whether the offense was robbery.[5] In addition to making a timely objection, defense counsel later moved for a mistrial on the basis of the prosecutor's question.

Although it was improper for the district attorney to initially ask the question, we agree with the trial court's reasoning in denying defendant's motion for mistrial: "The Court feels that it was—the former question was appropriately and timely objected to the moment it was uttered and sustained; and the jury was told that it was a crime of—felony for a theft as the witness had testified."

---

[4]Since neither party has questioned the propriety of sanitizing prior convictions (see *People* v. *Barrick* (1982) 33 Cal.3d 115 [187 Cal.Rptr. 716, 654 P.2d 1243]), we have refrained from addressing that issue in this case.

[5]Cross-examination of defendant began with the following colloquy:
"Q. Mr. Nunley, the first question I want to ask you about your background. Have you ever been convicted of a felony?
"A. Yes, back in '74.
" . . . . . . . . . . . . . . . . . . .
"Q. And the offense was robbery; is that right?
"A. Theft.
"[Defense Counsel]: Your Honor, I am going to object. That was covered.
"THE COURT: The crime of theft was the felony which he was convicted of. All right. [¶] Now proceed to the next question."

## III

*Sentencing Errors*

■ Defendant challenges the imposition of the upper base term for the burglary conviction. The court selected the aggravated term because the crime was premeditated and involved the break-in of a residential building.

We find that there is substantial evidence to support the lower court's choice of sentence. The fact that defendant entered the premises with a screwdriver together with the evidence that he had committed another burglary with a similar method of operation one month prior to the instant offense is sufficient for a finding of premeditation. Although there was no evidence that defendant had, in fact, broken into 100 Alma Street, the trial court's characterization of the building as being residential is justified. Clearly entry into an apartment building containing several living units involves a greater danger to personal safety than a burglary of a commercial or unoccupied edifice. Consequently, imposition of the aggravated sentence was proper.

Defendant also argues that the two one-year enhancements for his prior burglary convictions in 1977 and 1978 should be set aside for two reasons.

■ First, defendant submits that since the probation report filed in this case reveals a conviction for 1978 but not 1977, the enhancement for the 1977 burglary should be stricken. However, where, as here, a defendant who is charged with having suffered a previous conviction pleads guilty, his plea is conclusive of the fact of having suffered such conviction. (Pen. Code, § 1025; *People* v. *Dabney* (1967) 250 Cal.App.2d 933, 947 [59 Cal.Rptr. 243], cert. den. 390 U.S. 911 [19 L.Ed.2d 882, 88 S.Ct. 838].)

■ Second, two months after the abstract of judgment was filed in this action, defendant was convicted and sentenced on different burglary charges. In the subsequent proceeding the trial court used the same two prior burglary convictions to enhance defendant's sentence. Recognizing that the use of the same prior convictions for enhancement purposes in both the instant case and in the subsequent action might be improper, the trial court stated: "If there's any legal conflict between that judgment in that case [the instant action] and the judgments that I pronounced here [subsequent case], then it's the decision of the Court that that judgment in the prior Action 108203 should fall, because the most serious offense, the principal term that you should be punished on and everything flowing from it, is the first degree burglary in this case." On the basis of this pronouncement defendant contends that the enhancements in this case should be stricken.

What defendant fails to realize is that the judge in the subsequent trial, despite the fact that he had presided over the first trial, was without jurisdiction to alter the first judgment. Although a court may amend an abstract of judgment in order to correct a clerical error, such amendment may not be made in order to revise judicial error. (*In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729]; *In re Wimbs* (1966) 65 Cal.2d 490, 498 [55 Cal.Rptr. 222, 421 P.2d 70]; *Smith* v. *Superior Court* (1981) 115 Cal.App.3d 285, 290 [171 Cal.Rptr. 387].) The abstract of judgment was never corrected in the instant case and any attempt to do so would have lacked jurisdiction. Any claim of error in employing the same prior convictions for enhancement purposes in defendant's two trials should have been raised in defendant's appeal from the second proceeding.

■ Finally, defendant contends that the stayed term of one year for the attempted burglary was error. Penal Code section 664 provides for a penalty of "one-half the term of imprisonment prescribed upon a conviction of the offense *so attempted*," here one-half of the middle term of two years or one year. The trial court did *not* impose a consecutive sentence which would bring into play Penal Code section 1170.1. Instead the trial court stayed the term on the attempted burglary count which was correctly calculated at one year pursuant to Penal Code section 664.

The judgment is affirmed.

Kline, P. J., and Rouse, J., concurred.