Filed 10/9/14  P. v. Medina CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059024 |
| v. | (Super.Ct.No. SWF12100011) |
| ROBERT GONZALES MEDINA, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Graham Anderson Cribbs, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Robert Gonzales Medina, Jr., of second degree burglary (Pen. Code,[1] § 459) and theft (§ 484, subd. (a)). Because of prior convictions for other crimes, he was sentenced to a total term of 10 years in state prison.

Defendant contends that his burglary conviction was improper because he did not steal money from the victim while within her home, and the entry did not facilitate the theft or was not nefarious. We affirm.

I.

FACTS OF THE CASE

Defendant had been at the victim's home with the victim's grandson a few times before the date of the incident. Defendant had known the victim's grandson since March 2010 when they met in a drug treatment program. He had given the victim's grandson a ride home a number of times while they were both participating in the program. Defendant and the victim's grandson had previously taken drugs in the home on two or three occasions.

On September 7, 2011, defendant approached the victim while she was sitting outside her home.

Defendant admitted to the police that he asked the victim if she remembered him. Defendant told the victim that he had been to and inside her house previously. Defendant represented to the victim that he needed money to assist a member of her family with a broken water pump on his vehicle. There is a question whether she was told that it was

_____

[1] All further references are to the Penal Code.

for her grandson specifically or generally for a "family member." In response, the victim offered to write a check directly to the auto parts store, but defendant represented to her that the store would only take cash. The victim recalled going into the house twice, once to pick up her purse and again when she realized that she had forgotten her checkbook. Defendant followed the victim into her house on both occasions and stood by the bedroom inside the house while she collected her purse and checkbook. The victim did not object to defendant's coming into her house because she believed he was there to help a family member.

Defendant testified that he did not go inside the victim's house. His original purpose in going to the victim's home was to get morphine from her grandson. He asked the victim if her grandson was there, and she replied that he was not. He then formed a plan to convince her to give him money, which he planned to use to buy drugs. He knew that there was no money inside the house prior to the victim's entry into the house to get her purse and checkbook. He further testified that the victim only made one trip into her house.

After retrieving her checkbook from her home, the victim and defendant got into defendant's vehicle and drove together to the bank. Defendant accompanied the victim inside the bank and even attempted to walk up with her to the teller. The victim wrote a check to cash for $65, obtained the cash from the teller, and gave $60 to defendant when he took her back to her house. Defendant did not give the $60 to the victim's grandson; rather, he bought drugs, cigarettes, and a soda.

3

The next day, the victim called her grandson to check on his vehicle. When her grandson responded that he did not know what she was talking about, the victim realized that she had been swindled. The victim's grandson came to her house and he called the police.

## II.

## DISCUSSION

Defendant contends that there was an insufficient nexus between his entry into the victim's home and the theft to support the burglary conviction. Defendant contends that his entry into the victim's home did not sufficiently facilitate the theft to uphold his conviction for burglary.

In reviewing a sufficiency of evidence claim, our role is limited. We determine whether, on review of the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Smith* (2005) 37 Cal.4th 733, 738–739.) We must review the whole record, not isolated bits taken out of context, "in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence to determine whether the record discloses substantial evidence. [Citations.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245 (*Kwok*).) Reversal is unwarranted unless it appears that upon no hypothesis whatever is there substantial evidence to support the conviction. (*People v. Mason* (2006) 140 Cal.App.4th 1190, 1199.) If the circumstances reasonably support the findings of the jury, even if the evidence would also support a contrary finding, reversal is improper. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138–1139.)

4

Burglary is the entry of certain structures as listed in the statute with intent to commit a theft or any felony. (§ 459.) The burglary statute does not require that the theft or other felony take place "therein"—i.e., in the structure entered. (*People v. Wright* (1962) 206 Cal.App.2d 184, 188 (*Wright*).) The intended crime need not be successful in the space entered, or at all, for there to have been a burglary. (*People v. Elder* (1969) 274 Cal.App.2d 381, 398.) For an entry to constitute a burglary, the burglar's entry must facilitate the intended crime, and the entry must have a close connection to the crime that defendant intended to commit at the time of the entry. (*People v. Griffin* (2001) 90 Cal.App.4th 741, 749 (*Griffin*).) Facilitation is satisfied if the entry makes the successful completion of the crime easier or less risky for him. (*Kwok*, *supra*, 63 Cal.App.4th at p. 1248.) "An intent to commit theft by a false pretense or a false promise without the intent to perform will support a burglary conviction." (*People v. Parson* (2008) 44 Cal.4th 332, 354.)

Applying these principles here, a jury could reasonably infer that the entry into the victim's home facilitated the theft, and that there was a close connection between the entry and the theft. From defendant's own testimony, and the events preceding and following the entry, the jury could reasonably infer that at the time of entry into the victim's home, defendant's criminal scheme was to trick the victim out of $60 by telling her the money was needed to fix her grandson's car. Based on this course of conduct, it is a reasonable inference that an integral part of defendant's scheme was to stay with the victim at all times. (*People v. Johnson* (1980) 26 Cal.3d 557, 576−577 [we presume the existence of every fact the jury could reasonably infer from the evidence].)

The facts and circumstances of the transaction and defendant's conduct reasonably indicate that defendant's purpose in entering the premises was to facilitate theft. (*Kwok, supra*, 63 Cal.App.4th at pp. 1245, 1247-1248; *Griffin, supra*, 90 Cal.App.4th at p. 749.) Defendant told the victim about his prior visits to her home and lied about her grandson prior to his entry; it is a reasonable inference that such statements were made to allay any concern that his entry into her home was unusual. Additionally, by following the victim into her home twice, defendant was able to observe that she collected the items that he knew she needed in order for his plan to be successful. Furthermore, defendant could ensure that the victim did not call her grandson or the police if he stayed near her. At all times, despite being in three distinct spaces (her house, his car, the bank), defendant sought to stay by the victim's side until the theft was complete. Thus, entry into the victim's home made the completion of the crime less risky for defendant and thereby facilitated the crime. (*Kwok*, at p. 1248.)

Regarding the close connection requirement, this element is satisfied by the continuity of defendant's actions toward the successful execution of the crime. From inside the victim's residence to the victim's car, then to the bank, back to the car and to the victim's home where the victim finally gave the $60 to defendant, there was one continuous and uninterrupted succession of events culminating in the planned theft under false pretenses. Defendant never left her side until he obtained the money. Close connection is also satisfied in continuity of time; although the record does not reflect the length of the overall transaction between the first contact with the victim and her handing

6

over the money, we do know that there was no lapse in time between the initial entry of the victim's home and the theft.

The court in *Griffin*, *supra*, 90 Cal.App.4th 741 addressed contentions similar to those made by defendant in our case. In *Griffin*, the Court of Appeal upheld burglary convictions for two men who had entered an apartment seeking a man that they believed had stolen from them. (*Id.* at pp. 746, 749, 752.) The defendants coerced the victims by threat of violence into driving with them to find the man. (*Id.* at pp. 746−747.) The court in *Griffin* held that the burglary statue did not require that a burglar intend to commit the target crime in the premises entered. (*Id.* at p. 748.) Although the defendants did not know ultimately where they would find the man, they entered the friend's apartment for the specific purpose of tracking him down. (*Id.* at p. 749.) "Thus, their entry into the apartment could reasonably be considered closely connected with and made in order to facilitate the intended crime of assaulting [the man]." (*Ibid.*) As in *Griffin*, defendant stayed with his victim over several locations while pursuing the target crime. (*Id.* at pp. 746-747.) In both *Griffin* and here, the entry into the victim's home was not an essential step to successful completion of the target crime, but there was a unity of purpose between the initial entry and the successful completion of the intended crime. (*Id.* at p. 749.) The man the *Griffin* defendants were looking for was not in the apartment entered, and the money the defendant was seeking in the present case was not in the victim's home. The entry in *Griffin* was instead used to persuade the victim to comply with the defendants' demands. (*Id.* at pp. 746-747.) In our case, the entry was made to

7

ensure the victim remained unaware of defendant's deceit. Accordingly, defendant's entry into the victim's home here was closely connected to the target crime.

The case of *Kwok, supra*, 63 Cal.App.4th 1236 is also on point. In *Kwok,* the Court of Appeal upheld two separate burglary convictions for a man who twice entered the home of his intended victim. (*Id.* at pp. 1248, 1257.) In the first entry, the defendant temporarily removed a lock set so that he could make a copy of a key in order to facilitate future access to the victim's home to commit an assault more than a week later. (*Id.* at pp. 1243-1244, 1246.) The defendant argued that the initial entry was not a burglary because there was no evidence that he intended to commit theft or any felony on the same occasion as the entry. (*Id.* at p. 1246.) Although the defendant did not in the end need the key that he had made in order to carry out the later attack on the victim, "[o]btaining a key to the kitchen door facilitated the attack, not in the sense that using the key was an integral part of the assault or that it provided the direct means by which the assault was committed, but in the sense that it made appellant's scheme more convenient and less risky for him." (*Id.* at p. 1248.) Here, as in *Kwok,* the initial entries themselves into the victim's home were not necessary steps in order to carry out the theft by trick; however, by staying with the victim, defendant both ensured that the victim would collect everything she needed for him to get the money, and ensured that if she became suspicious, he would be instantly aware of it or be able to prevent her from becoming suspicious. Therefore, defendant's entry into the victim's home here facilitated the target crime.

Defendant contends that in other cases where a burglary conviction was upheld, "the actions of the defendant [upon entering the home] were in and of themselves criminal, or at the very least nefarious, or were a *necessary* step to completion of the crime." We disagree. First, defendant's entries into the victim's home were nefarious in the sense that they were part of his overall criminal scheme to trick her into giving him $60. Second, case law does not require that the defendant's entry and actions in the premises entered be either overtly criminal, nefarious, or even objectively necessary to the execution of the crime. Instead, *Kwok* and *Griffin* require that the entry be intended to facilitate the intended crime.

Defendant characterizes his conduct as "merely fortuitous," "de minimus," or "no more (or at best, barely more) facilitating of the theft." Defendant states that the "theory that [defendant] went in with [the victim] to make sure that she did not call police or otherwise interfere with his plan is *entirely speculative*." Defendant distinguishes the facts from *Kwok*, where the "connection between the initial entry [to remove the locking mechanism and make a copy of a key] and the subsequent crime was not in any way speculative." In sum, defendant contends that the jury could not reasonably infer from the trial testimony that defendant intended to stay close to the victim to facilitate the theft of $60.

Defendant's description of the entries to the home as fortuitous ignores the extent, character, and criminal consequence of his contact with the victim. Defendant had previously visited the victim's home to take drugs, had a prior relationship with her grandson, and maintained continuous contact with her on the date of the crime. We must

9

consider the entire record when evaluating for substantial evidence, not just recitations of isolated facts taken out of their context. (*People v. Johnson, supra*, 26 Cal.3d at pp. 577-578.) We must view the evidence in the light most favorable to the prosecution. (*Kwok, supra*, 63 Cal.App.4th at p. 1245.) As noted above, it is a reasonable inference that defendant felt staying with the victim until the theft was complete made the completion of the theft less risky for him. And defendant admitted that it was his plan to trick her out of the $60, as the defendant had in *Parson*. (*People v. Parson, supra*, 44 Cal.4th at p. 354.) The inference that the entry facilitated the theft rests primarily on defendant's admission that he had formed the plan for the theft prior to entry, and defendant's consistent pattern of staying near the victim at each link of the chain of events until receipt of the $60. These additional inferred motivations for staying with the victim negate defendant's argument that staying with the victim was fortuitous and not related to the target crime. As discussed, *ante*, it is reasonable to infer that by following the victim into her home, defendant would be aware if the victim became suspicious, and would be assured that she gathered what she needed for his plan to succeed. Such inferences are not speculative as defendant contends.

Defendant contends that the victim was not suspicious, and therefore the entries into the home could not have facilitated the theft. While indications the victim was suspicious would have provided an additional reason to stay close to her, the absence of suspicion does not weaken the reasonable inferences that defendant stayed with her to facilitate the crime's execution. Defendant used his knowledge of the victim, her home, and her grandson to allay any potential concerns that the victim might have had. That he

10

had three separate opportunities not to follow her closely when he chose instead to do so indicates that staying with the victim was very important to defendant. This was a crime of theft by trick—thus, tricking her into believing his lie was an essential part of the scheme. (§ 484, subd. (a); see *People v. Parson*, *supra*, 44 Cal.4th at p. 354.) The nature of the target crime, combined with the defendant's statements and actions prior to successful completion of the target crime, as well as his admission of his plan to take the money all support the reasonable inference that the entry facilitated the theft by ensuring that the victim remained unaware of his falsehoods.

Defendant argues without supporting authority that to the extent that the instant case is not distinguishable from *Kwok* or *Griffin*, those cases are wrongly decided. We need not consider that unsupported contention. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

Accordingly, there was substantial evidence to support defendant's burglary conviction.

III.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS.


RAMIREZ _____
P. J.

We concur:


KING _____
J.


MILLER _____
J.