Filed 3/22/16  In re A.S. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | H042302 (Santa Clara County Super. Ct. No. JV41065) |
| THE PEOPLE, Plaintiff and Respondent, v. A.S., Defendant and Appellant. | |

A.S. (the minor) appeals an order of the juvenile court in which she was found to have committed, among other offenses, felony burglary of a vehicle (Pen. Code, §§ 459, 460, subd. (b)),[1] arguing there is not substantial evidence to support the court's finding that the allegations were true.

We agree the evidence presented at the jurisdictional hearing was insufficient to support a finding that the minor had the necessary intent to commit a theft or other felony when she entered the victim's vehicle.  Consequently, we will reverse the judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Section 602 petition*

On January 29, 2015, the People filed a petition under Welfare and Institutions Code section 602, subdivision (a), alleging that the minor committed felony assault by

_____

[1] Unspecified statutory references are to the Penal Code.

means of force likely to produce great bodily injury against Stefanie Tator (§ 245, subd. (a)(4), count 1); felony burglary of a vehicle (§§ 459, 460, subd. (b), count 2); and misdemeanor battery of Timothy Tator (§§ 242, 243, subd. (a), count 3).

### B. *Jurisdictional hearing*[2]

#### 1. *People's case*

##### a. *Stefanie Tator*

On January 28, 2015, at approximately 2:00 a.m., Stefanie was walking her dog before leaving for her 3:00 a.m. work shift. She heard a noise and decided to walk toward the garages near her four-plex to investigate because there had been some recent break-ins at a neighbor's garage. Stefanie did not notice anything unusual, so she started to make her way back to the street. As she turned, she saw someone sit up in the driver's seat of her car, which was parked outside the garages. Stefanie started walking toward her car and saw "three other heads pop[] up; one in the passenger seat, and two in the rear."

As she got to her car, Stefanie grabbed the driver's side door handle, but the car was locked. She told the people inside, "Get out of my car." None of them responded, but instead looked at her, smiling. Stefanie repeated herself, five or six times, more and more loudly, until finally, a girl got out of the backseat on the driver's side. The girl "said something like, we're just trying to get warm" then leaned inside the car to pick up "a backpack or bag or something of her stuff." Stefanie told the girl to leave with her friends or she would call the police. The girl did not respond.

The driver's side door opened and Stefanie saw a young man sitting behind the wheel. She said, "Get out of my f'ing car." The man said, "Why?" and Stefanie replied,

---

[2] Our recitation of the evidence introduced at the jurisdictional hearing is limited to that bearing directly on the charge of vehicle burglary (count 2) since that is the only charge she has challenged in this appeal. We have either omitted or mention only briefly the testimony relating to the other two charges brought against the minor.

2

"Because it's my f'ing car; right?"  He stepped out of the car and stood behind the girl who first got out.  The other two people in the car, one of whom was a girl,[3] got out as well and walked around to the driver's side of the car.  Stefanie again told them to leave and she would not call the police.  She repeated herself several times, but they made no attempt to leave.

Stefanie tapped the first girl who had gotten out of the car on the shoulder and told her to "walk away[, and] make it easy on yourselves."  The second girl who got out of the car came up to Stefanie and said, "Don't hit my sister."  Someone—Stefanie did not see who—hit her in the face, knocking off her glasses.  Stefanie began to walk around them to get back to her home, saying, "[I]f that's what you want, then I'm just going to walk away and call the cops."  She saw her husband, Timothy, standing at the front door so she called out to him to call the police because "Somebody is trying to steal our car."

Stefanie testified somebody in the group started throwing things at her.  She recognized items from her glove box, such as a small pair of binoculars, some CDs and cell phone chargers, fly past her head.  She heard her husband yell, "Are you throwing stuff at my wife?" and she turned around to see one of the girls had followed her.

Stefanie said she told the girl she would hold her until the police arrived and grabbed the sleeve of her sweatshirt.  She said "Now we're going to sit down until the police gets [*sic*] here" and forced her to sit on the curb.  As Stefanie began to turn and sit down next to the girl, someone punched her in the face, splitting her lip.  She could not see who hit her.  Stefanie stood up and "they" started hitting her in the head from behind, anywhere from 20 to 40 times.  She felt it was more than one person hitting her, and Stefanie began screaming for help, trying to protect herself from the blows.

Someone pulled the hood of her coat over her head and pushed her, face first, against a nearby fence.  The blows continued until Stefanie heard a female scream,

---

[3] Stefanie said she could not tell the sex of the second person during their encounter.

"I'm going to scratch your eyes out" and someone began clawing at her eyes with their fingers. Her attacker clawed at her eyes two or three times before someone pulled the attacker away. One of her neighbors guided Stefanie inside her house.

### b. Timothy Tator

Timothy woke up a little after 2:00 a.m. on January 28, 2015, when he heard what sounded like women screaming outside his home. He put some pants on and went downstairs, noticing that Stefanie and the dog were gone. The sounds were coming from behind the house, so he went out the front door and, recognizing Stefanie was one of those he could hear screaming, ran around the back.

Timothy saw Stefanie and their dog, facing two other people. One of the two people threw something at Stefanie's face. He chased after the two people, and as he rounded the corner to an alley, he saw a total of four people running away from him. He caught the slowest of the four, a young girl, and grabbed her around her neck. He asked her why she was throwing things at his wife, and she said, "It wasn't me." He let her go and apologized.

Two other girls, one of whom was the minor, ran back to Timothy, yelling at him to "Let her go." The minor punched Timothy in the face. Timothy ran back toward his house to get his phone and call the police. One of the girls swung her backpack toward him, which he managed to kick out of her grasp. Thinking there would be identification inside the backpack, Timothy grabbed it off the ground and brought it into the house with him.

Timothy had to search for his phone, so perhaps three minutes elapsed before he could go back outside. He ran back toward the alley and saw the minor and the other two girls attacking his wife, punching and kicking her as she was trapped against a fence. He grabbed the girl who was holding onto the hood of Stefanie's jacket and threw her off. Suddenly, he heard a man's voice behind him say, "What's up, nigger?" The man threw

4

a punch at his head, but Timothy ducked and grabbed the man's legs, tackling him and pinning him to the ground.

Timothy's neighbor came running up, holding a can of OC spray,[4] and told Timothy to let the man go. Timothy told his neighbor, "Okay, but don't let him go," and got off him. The man ran off down the alley. Timothy looked around and saw that the three girls were gone as well.

Timothy said that the items that were thrown at Stefanie came from her car's glove box.

### c.    San Jose Police Officer Marco Monzon

Monzon was dispatched in response to a report of a disturbance at the complex where the Tators lived. On arrival, he spoke to some witnesses and tried to find out if any surveillance cameras were in the area that might have recorded some of the events. Monzon searched the Tators' car and said "[m]iscellaneous items were kind of tossed around. The glove box and the center console were both open." He could not recall if any of the car's doors were open when he first approached it, but the right rear passenger window was rolled down. Neither the ignition nor the door locks showed any signs of tampering.

In the rear passenger seat, Monzon discovered a black backpack with the word "Savage" written on it. He searched the backpack, but none of the items inside it belonged to the Tators.

---

[4] The neighbor, Michael Hutchens, testified for the defense and clarified that this was "trainer" OC spray, with pressurized water, rather than pepper spray.

5

## 2. *Defense case*[5]

The minor testified she was at friend's house with her younger sister on the evening of January 28, 2015. The three of them left the house around 6:00 p.m. and went out to a park. At some point, the three girls were joined by the minor's (male) cousin and they ended up on Judith Street where another friend lived.

The minor had hoped to stay overnight at this friend's house, but the group had to leave around midnight. Around 1:30 or almost 2:00 a.m., they noticed a car outside a garage with a window down. She unlocked the door and they got in. The minor only wanted to get warm and sleep until morning. She denied entering the car in order to steal its contents and denied taking anything from the car at any time.

She and her friends were in the car "for a while" before a woman (Stefanie) came out and angrily said, "Get out of my car." At first, the minor was frightened and did not say anything, but when Stefanie said, "Get the F out of my car," the minor opened her door and got out. Her friends got out of the car too.

Stefanie told the minor and her friends to leave, but they told her they would not leave the apartments. Stefanie got mad and started cursing at them. The minor threw a water bottle at her, then she and her friends ran away. However, Stefanie managed to catch the minor's sister and had her in a chokehold. The minor and the other two went back to help her. The minor told Stefanie to let her sister go, but she said no. The minor grabbed Stefanie's hand and struggled with her for a couple minutes, when Stefanie's husband (Timothy) came running out asking, "Why are you on my wife?"

The minor and her companions started running away again, but Timothy was able to catch the minor's sister and put her in a chokehold. The minor came back to help her

---

[5] The defense also called Michael Hutchens to testify, but his testimony related only to the altercations he witnessed between the Tators and the minor and her companions. None of his testimony was relevant to the auto burglary charge which is the only issue the minor raises on appeal.

6

sister. She pushed Timothy, who got angry and they started throwing punches at each other. Timothy hit her five or six times, knocking her down twice. She denied ever hitting Stefanie or jumping on her back, though she said Stefanie bit her on the finger when the minor was trying to free her sister from the chokehold.

She stopped fighting with Timothy, and she and her sister and friend all ran off. A short time later, she saw that her sister had been caught by someone and placed in handcuffs. The minor thought "it was done for her" so she left. A police car drove past her and her friend, and she was stopped and handcuffed.

### 3. *Jurisdictional findings and disposition*

On March 23, 2015, the juvenile court found true the allegations in the petition as to all three counts. As to the burglary allegation, the trial court stated, "Count 2 is a little more difficult for me. But as I think it through, the sequence seems to be that everybody gets out of the car, Stefanie says, 'Leave, so I won't have to call the cops,' and something starts flying, and somebody throws something at her. And that something, I think, is from inside the car. They are things from inside the car. How did they have those things if they didn't take them with them and already have it on them when they—when they got out of the car? [¶] . . . So I think circumstantially the evidence is there for count 2."

On April 21, 2015, the juvenile court declared the minor a ward of the court, released her to her father's custody under the supervision of probation, with standard terms and conditions, and further ordered that she be subject to electronic monitoring for 45 days.

## II. DISCUSSION

### A. *Sufficiency of the evidence to support burglary allegations*

The minor argues there was insufficient evidence presented to show she committed auto burglary, specifically that she had the necessary felonious intent at the time she entered Stefanie's car.

7

*1.     Standard of review*

" 'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Wallace* (2008) 44 Cal.4th 1032, 1077, quoting *People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean* (1988) 46 Cal.3d 919, 933, quoting *People v. Hillery* (1965) 62 Cal.2d 692, 702.) "The standard of review is the same when the prosecution relies mainly on circumstantial evidence." (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

*2.     Legal principles regarding burglary*

Section 459 provides in pertinent part: "Every person who enters any . . . vehicle as defined by the Vehicle Code, when the doors are locked, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." The crime of burglary has two elements: (1) unlawful entry; accompanied by (2) the intent to commit theft (either felony or misdemeanor) or any other felony. (§§ 459, 490a; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041 & fn. 8 (*Montoya*).) The intent to commit the underlying theft or felony must exist at the time of entry. (*People v. Holt* (1997) 15 Cal.4th 619, 699.) However, "[o]ne may be liable for burglary upon entry with the requisite intent to commit a felony or a theft . . . , regardless of whether . . . any felony or theft actually is committed." (*Montoya*, *supra*, at pp. 1041-1042.)

"The intention with which an accused [unlawfully] enters . . . is a question of fact and where the circumstances of a particular case and the conduct of the accused reasonably indicate his [or her] purpose in doing so is to commit a [theft] or any felony[,] a verdict of guilty of the crime of burglary will not be disturbed on appeal." (*People v.*

8

*Kittrelle* (1951) 102 Cal.App.2d 149, 156.) Intent is rarely susceptible of direct proof, and therefore it may be inferred from all the facts and circumstances disclosed by the evidence. (*People v. Matson* (1974) 13 Cal.3d 35, 41.) "[I]n showing that a defendant entered . . . with felonious intent, the [prosecution] can rely upon reasonable inferences drawn 'from all of the facts and circumstances disclosed by the evidence,' since felonious intent is rarely proven through direct evidence." (*In re Anthony M.* (1981) 116 Cal.App.3d 491, 501.) "Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal." (*People v. Nunley* (1985) 168 Cal.App.3d 225, 232.)

### 3. *Analysis*

On appeal, the minor does not dispute that she and her companions unlawfully entered Stefanie's vehicle; instead, she challenges only the sufficiency of the evidence to support the intent element of the crime.

Our prior opinion in *In re Leanna W.* (2004) 120 Cal.App.4th 735 (*Leanna W.*), is instructive. There, we reversed the juvenile court's jurisdictional finding because there was insufficient evidence that Leanna had the specific intent to commit theft. Leanna was charged with burglary for entering her grandmother's house without permission while her grandmother was out of town and throwing herself a going-away party, entertaining up to 40 guests aged 15 to 20 years old. (*Id.* at p. 739.) During the party, in addition to damaging the premises in various ways, the guests used grandmother's utilities and drank her alcohol, ordered pay-per-view content from the grandmother's DirecTV account, and took cash and jewelry from the home. (*Id.* at pp. 738-740.) We found the evidence insufficient to support a finding of intent to commit burglary because there was no evidence that Leanna—as opposed to one or more of her 30 or 40 guests— actually used the utilities, drank alcohol, placed orders with the cable providers, or stole

9

jewelry and money, or that Leanna entered the house with the intent to do any of those things. (*Id*. at pp. 742-743.)

Similarly, the evidence here showed that Stefanie came outside around 2:00 a.m. to discover the minor and three others sitting in her car. She confronted them and they (eventually) exited her vehicle. After Stefanie was struck in the face, she headed away from the group toward her home in order to call the police. As she did so, various objects flew past her head, and she recognized these objects as things that had been located in her car's glove box and center console.

The juvenile court reasoned that the minor and her companions had to be in possession of the items thrown at Stefanie when they got out of her car, but in so reasoning, it ignored the possibility that the four had sufficient time to reenter the car in order to find things to throw. Stefanie never saw who threw the items at her. Stefanie's back was turned to the group as she walked back toward her house and thus could not see if they were rifling through her vehicle for ammunition or pulled the items from their pockets, backpacks or purses before throwing them at her. There was no testimony that the objects flew at her all at once as opposed to serially. Timothy testified he saw one of the four throw something at his wife, but he did not say that he saw the thrower pull the object from a pocket or backpack or purse prior to throwing it. There was no testimony as to which of the four threw any items from the car at Stefanie, nor was there testimony that the thrower(s) had possession of any of these objects prior to exiting the car.

Furthermore, there was no testimony that any of the items taken from the car and thrown at Stefanie were, at any time, *in the minor's possession*. The only object she admitted throwing was a water bottle which did not come from Stefanie's vehicle. Just as in *Leanna W*., there was no evidence that the minor—as opposed to her three companions—was the one who took the items from Stefanie's vehicle, or that she entered the vehicle with the intent to commit a theft or other felony. (*Leanna W*., *supra*, 120 Cal.App.4th at pp. 742-743.)

10

In sum, there is not substantial evidence to support a finding that the minor committed burglary of Stefanie's vehicle, specifically that the minor had the necessary intent to commit a theft or other felony at the time she unlawfully entered the vehicle. The juvenile court erred in finding the allegation of burglary true.

## III.    DISPOSITION

The dispositional order is reversed.  The matter is remanded to the juvenile court with directions to enter a new order striking the true finding as to the Penal Code sections 459 and 460, subdivision (b) allegation in count 2 of the petition filed under section 602 of the Welfare and Institutions Code.  The true findings as to the Penal Code section 245, subdivision (a)(4) allegation in count 1 and the Penal Code sections 242 and 243, subdivision (a) allegation in count 3 are to be reinstated.  The juvenile court is to conduct a new dispositional hearing at which it shall recalculate the maximum time of confinement.

11

                                            _____

                                                       Premo, J.

WE CONCUR:

_____
          Rushing, P.J.

_____
          Márquez, J.

The People v. A.S.
H042302